UNITED STATES of America,
Plaintiff–Appellee,

v.

Pablo RIVERA–SANCHEZ,
Defendant–Appellant.

No. 99–10243.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 27, 2000

Submission Vacated May 2, 2000

Resubmitted June 29, 2000

Filed Aug. 2, 2000

Scott M. McNamara, Tucson, Arizona, for the defendant-appellant.

Richard E. Gordon, Assistant United States Attorney, and Virginia C. Kelly, Assistant United States Attorney, District of Arizona, Tucson; Arizona, for the plaintiff-appellee.

Before: FLETCHER, ALARCON, HAWKINS, Circuit Judges.

ALARCON, Circuit Judge:

Defendant Pablo Rivera–Sanchez ("Rivera–Sanchez") appeals from the judgment of conviction entered following his plea of

guilty to the crime of entering the United States, after being deported, without the express consent of the Attorney General. The single-count indictment and the judgment both allege that Rivera–Sanchez violated 8 U.S.C. §§ 1326(a) and 1326(b)(2). Rivera–Sanchez contends that his first attorney's inadequate explanation of the Government's plea offer deprived him of the effective assistance of counsel. He also maintains that we must vacate the judgment of conviction and remand for re-sentencing because § 1326(b)(2) does not set forth a punishable offense. We hold that Rivera–Sanchez failed to demonstrate that he was ineffectively represented by counsel. We therefore affirm the judgment of conviction pursuant to § 1326(a). We remand the case to the district court, however, to correct the judgment and strike any reference to § 1326(b)(2). Rivera–Sanchez also appeals from the sentence imposed by the district court because it denied his request for a downward departure on the basis of ineffective assistance of counsel. We conclude that we have no jurisdiction to consider the merits of this contention.

## I

Pablo Rivera–Sanchez was arrested by U.S. Border Patrol agents after he entered the United States east of Nogales, Arizona on August 1, 1998. He admitted that he was a citizen of Mexico and that he did not have permission to enter the United States. A computer check revealed that Rivera–Sanchez had been previously deported from the United States because he had committed an aggravated felony. The complaint against Rivera–Sanchez charged him with a single count of illegally re-entering the country after having been deported.

On August 17, 1998, the Government sent a letter to Rivera–Sanchez's first attorney, David Aguilar ("Aguilar"), in which it informed him it would recommend a four-level departure if Rivera–Sanchez would enter a guilty plea. This downward departure would result in a sentencing range of 30 to 37 months. The Govern-

ment's letter provided that the offer would be withdrawn on August 20, 1998. Rivera–Sanchez did not accept this agreement. On September 9, 1998, Rivera–Sanchez was indicted by the grand jury. The indictment alleges that Rivera–Sanchez "entered, attempted to enter, and was found in the United States of America after having been denied admission, excluded, deported and removed therefrom ... in violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(2)."

Rivera–Sanchez wrote several letters to the district court complaining about his lack of contact with Aguilar in which he requested that the court appoint new counsel for him. On October 30, 1998, the district court held a status hearing to discuss whether new defense counsel ought to be appointed, and relieved Aguilar of any further duty in the case. The court appointed Scott McNamara as Rivera–Sanchez's new counsel on November 10, 1998.

Mr. McNamara asked the Government to reinstate the plea offer. The Government refused. On December 15, 1998, Rivera–Sanchez pled guilty as charged without any plea agreement. On February 17, 1999, the district court conducted a sentencing proceeding and heard argument on Rivera–Sanchez's objections to the presentence report. The district court refused to grant a departure based on Rivera–Sanchez's claim that Aguilar's representation regarding the plea agreement was ineffective. It granted a two-level downward departure, however, for cultural assimilation. The district court sentenced Rivera–Sanchez to thirty-seven months in prison and three years of supervised release. Rivera–Sanchez has timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

Rivera–Sanchez contends that Aguilar deprived him of the effective assistance of counsel because he failed to explain adequately the plea agreement offered by the Government. This alleged ineffective as-

sistance, he asserts, caused him to reject the plea agreement and to receive a more severe punishment than the sentence offered by the Government. He argues that because a defendant never seeks additional time in prison it is clear that, had he understood the offered plea agreement, he would have accepted it.

■ Typically, claims of ineffective assistance of counsel are inappropriate on direct appeal and should be raised, instead, in habeas corpus proceedings. *See United States v. Ross*, 206 F.3d 896, 900 (9th Cir.2000). We will only review ineffective assistance claims on direct appeal where the record is "sufficiently developed to permit review and determination of the issue," or "the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *Id.* (quoting *United States v. Robinson*, 967 F.2d 287, 290 (9th Cir.1992)) (internal quotations omitted). Here, the record below is sufficient for us to review the issue of ineffective assistance of counsel because the district court held a hearing, prior to sentencing Rivera–Sanchez, to examine the question whether Aguilar's representation was ineffective in order to determine whether a downward departure was warranted on that basis. Rivera–Sanchez and Aguilar both testified at the hearing regarding Aguilar's efforts to communicate the terms of the proposed plea agreement to Rivera–Sanchez. We review a claim of ineffective assistance of counsel de novo. *See United States v. Blaylock*, 20 F.3d 1458, 1464–65 (9th Cir.1994). After reviewing the sentencing hearing transcripts, we conclude that Rivera–Sanchez has failed to demonstrate that he was deprived of the effective assistance of counsel.

■ To establish ineffective assistance of counsel, Rivera–Sanchez must show that: "(1) his attorney's performance was unreasonable under prevailing professional standards; and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different." *Id.* at 1465 (quoting

*Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (internal quotations and citations omitted). Rivera–Sanchez argues that, but for Aguilar's ineffective assistance of counsel, he would have accepted the Government's plea agreement and received a lower sentence. Thus, he argues that the outcome of sentencing would have been different. He does not argue that his counsel's representation affected the judgment of conviction. Indeed, he cannot make that argument because he pled guilty notwithstanding the withdrawal of the plea agreement. Thus, Rivera–Sanchez has failed to make a claim of ineffective assistance of counsel warranting a reversal of his judgment of conviction.

■ Rivera–Sanchez has also failed to demonstrate that he received ineffective assistance of counsel warranting a reversal of his sentence. In *Blaylock*, we held that the defendant received ineffective assistance when his attorney failed to inform him of a plea offer. *See id.* at 1466. In the case at bar, however, Aguilar communicated the terms of the plea offer to Rivera–Sanchez. We must decide, therefore, whether Aguilar communicated the plea offer so insufficiently under prevailing professional standards that he provided ineffective assistance to Rivera–Sanchez, and, if so, whether Rivera–Sanchez would have accepted the offer had Aguilar explained the agreement sufficiently.

The Tenth Circuit has considered a case where the attorney communicated the plea offer to the defendant but the defendant claimed that the communication was ineffective. *See United States v. Carter*, 130 F.3d 1432, 1441–42 (10th Cir.1997). In *Carter*, the court noted that the attorney advised the defendant of the sentence he might receive if he went to trial and urged the defendant to accept the offer. *See id.* at 1442. The court concluded that the record reflected that the defendant had full knowledge of the ramifications of his decision and decided to reject the plea offer, and therefore held that the defen-

dant did not demonstrate ineffective assistance of counsel. *See id.*

Here, Aguilar spoke with Rivera–Sanchez on several occasions regarding the terms of the plea agreement. He explained to Rivera–Sanchez that he had a right to a trial, but that under the Sentencing Guidelines he would receive a greater sentence than that set forth in the plea agreement if he rejected it, and that it would be in his best interest to accept it. The record shows that Aguilar informed Rivera–Sanchez of the crime alleged in the complaint, the sentence he would receive under the plea agreement, and that he faced a more severe punishment if he didn't accept the agreement.

Rivera–Sanchez argues that Aguilar should have sent him a letter explaining the agreement, including a copy of the sentencing chart, and provided him with a copy of the Sentencing Guidelines in Spanish. Rivera–Sanchez also asserts that Aguilar, upon realizing that the case was a "slam-dunk loser," and that his communications with Rivera–Sanchez regarding the plea agreement had broken down, should have withdrawn as counsel before the plea agreement expired to allow Rivera–Sanchez to get a second opinion as to the advisability of accepting the plea agreement.

Rivera–Sanchez's own testimony, however, belies his contention that he did not adequately understand the terms of the plea agreement. At the hearing regarding appointment of new counsel, Rivera–Sanchez explained to the court that he wanted "a normal period of time ... something fair," and that he didn't know that the sentence the Government offered in its plea agreement would be the punishment for re-entering the United States. Rivera–Sanchez also stated that, upon learning the terms of the plea agreement, he asked Aguilar to see if he could get him a better deal. Aguilar told him he could not do so. The district court informed Rivera–Sanchez that the sentence recommended in the plea agreement was the standard offer from the Government in this type of case.

The district court then asked if Rivera–Sanchez wanted a new attorney. Rivera–Sanchez stated that he did not want to go to trial, but that he wanted a new attorney "to see what deal the new attorney can get me." Rivera–Sanchez has failed to demonstrate that he did not understand the plea agreement. Instead, the record shows that he declined to accept the plea agreement because of his view that his conduct did not warrant the sentence recommended by the Government. We are persuaded that Rivera–Sanchez did not receive ineffective assistance of counsel.

## III

■ Rivera–Sanchez also contends that the district court erred in entering judgment against him pursuant to 8 U.S.C. §§ 1326(a) and (b)(2). Rivera–Sanchez correctly asserts that § 1326(b)(2) does not define a separate punishable offense. *See Almendarez–Torres v. United States,* 523 U.S. 224, 226, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (holding that § 1326(b) is a penalty provision and does not constitute a separate crime). He argues that we should, therefore, reverse his conviction and remand for reentry of judgment and for re-sentencing pursuant to § 1326(a) only. The Government agrees that § 1326(b)(2) does not constitute a separate punishable offense. It maintains, however, that Rivera–Sanchez was solely indicted and convicted of a violation of § 1326(a), and that the judgment simply referred to § 1326(b)(2) to explain that the sentence was enhanced pursuant to that subsection.

■ Whether the district court properly entered judgment pursuant to both § 1326(a) and § 1326(b)(2) is a question of law that we review de novo. *Cf. Torres–Lopez v. May,* 111 F.3d 633, 638 (9th Cir. 1997). Applying *Almendarez–Torres,* we have reversed a judgment of conviction for a violation of § 1326(b) where the defendant was convicted in separate counts of violating both § 1326(a) and § 1326(b). *See United States v. Alviso,* 152 F.3d 1195, 1200 (9th Cir.1998) (affirming conviction

for violating 8 U.S.C. § 1326(a), reversing conviction under 8 U.S.C. § 1326(b)(1), and remanding for re-sentencing under § 1326(a)).

■ In this case, however, Rivera–Sanchez was indicted, convicted and sentenced for one crime, in a single count, and not in separate counts pursuant to § 1326(a) and § 1326(b)(2). Therefore, we are not required to vacate the judgment of conviction or re-sentence because Rivera–Sanchez was convicted of only one crime. *See Lynch v. United States,* 364 F.2d 313, 314 (9th Cir.1966) (affirming a conviction where the defendant was indicted and convicted of one count of bank robbery pursuant to 18 U.S.C. §§ 2113(a) and (d) because the indictment was in one count and "[a]ny reference in the indictment and judgment to 18 U.S.C. §§ 2113(a) and (d) does not constitute two separate and distinct offenses.") (citing *Green v. United States,* 365 U.S. 301, 305–06, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961)). Furthermore, Rivera–Sanchez's sentence already reflects that the punishment was for a violation of § 1326(a) as enhanced by § 1326(b)(2). Accordingly, we reject Rivera–Sanchez's suggestion that we vacate the judgment and remand for re-sentencing.

Rivera–Sanchez argues that the inclusion of § 1326(b)(2) in the judgment is potentially harmful because it may cause confusion as to the number of his convictions. Such confusion, he argues, could adversely affect him if he were to face a more severe punishment based on the number of prior convictions he has in his record. This type of error, however, is at most clerical and may be corrected pursuant to Rule 36 of the Federal Rules of Criminal Procedure without the need for a new trial or a new sentencing hearing. *See* Fed. R.Crim. Proc. 36 ("Clerical mistakes in judgments, orders or other parts of the record ... may be corrected by the

court at any time and after such notice, if any, as the court orders."); *see also United States v. Thomas,* 774 F.2d 807, 814 (7th Cir.1985) (holding that the court made a clerical error, or was "just guilty of creating ambiguous verbiage," where it sentenced the defendant to parole under Counts Four and Five instead of One and Three, and concluding that "[t]he answer is for the order to be corrected, not vacated"); *United States v. Hanna,* 639 F.2d 192, 194 (5th Cir.1980) (holding that it was a "clerical error readily correctable under F.R.Crim. P. 36" where the judgment of conviction named a different subsection than that for which the defendant was charged and tried, but where the penalties under those subsections were the same). We hold that the proper procedure under these circumstances is to direct the district court to enter a corrected judgment striking the reference to § 1326(b)(2) so that the judgment will unambiguously reflect that the defendant was convicted of only one punishable offense pursuant to § 1326(a). *See* 28 U.S.C. § 2106 ("The Supreme Court or any other court of appellate jurisdiction may ... remand the cause and direct the entry of such appropriate judgment, decree or order ... as may be just under the circumstances.").

Our conclusion that this decision meets the criteria for publication was prompted by the fact that it establishes a rule of law that we had not previously announced in a published opinion.[1] *See* 9th Cir. R. 36–2(a). Various three-judge panels of our court, however, have issued a number of unpublished memorandum decisions taking different approaches to resolving the question whether the Supreme Court's opinion in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), requires a district court faced with a defendant convicted of illegal re-

---

1. In *United States v. Ceron–Sanchez,* 222 F.3d 1169 (9th Cir.2000), another panel of this court noted that the appellant had pled guilty to one count of unlawful reentry after deportation in violation of 8 U.S.C. § 1326(a) and § 1326(b)(2). The court indicated in a foot- note that "the fact that, in its judgment, the district court referenced § 1326(b)(2) in addition to § 1326(a) does not present a problem on appeal." The court did not address the issue presented in this appeal.

entry after deportation whose indictment refers to both 8 U.S.C. § 1326(a) and 8 U.S.C. § 1326(b)(2) to resentence or merely correct the judgment of conviction. These conflicting mandates undoubtedly have created no small amount of confusion for district judges who serve in border districts. While our present circuit rules prohibit the citation of unpublished memorandum dispositions, *see* 9th Cir. R. 36–3, we are mindful of the fact that they are readily available in on line legal databases such as Westlaw and Lexis.

During oral argument, we asked counsel to submit a list of the unpublished dispositions of this court that have confronted this issue. The parties produced a list of twenty separate unpublished dispositions instructing district courts to take a total of three different approaches to correct the problem. Under our rules, these unpublished memorandum dispositions have no precedential value, *see* 9th Cir. R. 36–3, and this opinion now reflects the law of the circuit. To avoid even the possibility that someone might rely upon them, however, we list these unpublished memorandum decisions below so that counsel and the district courts will know that each of them has been superseded today.

The following cases were remanded for resentencing in unpublished memorandum dispositions:

*United States v. Leon–Sanchez,* No. 98–10008, 1998 WL 845799 (9th Cir. Dec.4, 1998); *United States v. Pintado–Isiordia,* No. 98–50060, 1999 WL 50905 (9th Cir. Jan.21, 1999); *United States v. Lopez–Morales,* No. 98–50089, 1999 WL 313323 (9th Cir. Mar.22, 1999); *United States v. Avila–Juarez,* No. 97–50196, 1999 WL 273316 (9th Cir. Apr.21, 1999); *United States v. Bello–Baena,* No. 98–10168, 1999 WL 401454 (9th Cir. June 7, 1999); *United States v. Pena–Lua,* No. 98–50581, 1999 WL 408050 (9th Cir. June 15, 1999); *United States v. Palestino–Rios,* No. 98–10330, 1999 WL 514327 (9th Cir. July 15, 1999); *United States v. Barraza–Gastelum,* No. 98–10123, 1999 WL 503787 (9th Cir. July 14, 1999); *United States v. Anguiano,* No. 98–50341, 1999 WL 511330 (9th Cir. July

15, 1999); *United States v. Vasquez–Chavez,* No. 98–50244, 1999 WL 776221 (9th Cir. Sept.29, 1999); and *United States v. Cruz,* No. 98–50406, 1999 WL 958499 (9th Cir. Oct.19, 1999).

The following cases were remanded for the district court to correct the judgment:

*United States v. Rodriguez–Ortiz,* No. 97–30329, 1999 WL 274365 (9th Cir. Apr.15, 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000); *United States v. Ciriaco–Gomez,* No. 98–50401, 1999 WL 439079 (9th Cir. June 17, 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 426, 145 L.Ed.2d 333 (1999); *United States v. Salinas–Rodriguez,* No. 97–30186, 1999 WL 439373 (9th Cir. June 17, 1999); *United States v. Lopez–Arce,* No. 98–10461, 1999 WL 417910 (9th Cir. June 21, 1999); *United States v. Madrigal–Perez,* No. 94–30414, 1999 WL 742295 (9th Cir. Sept.22, 1999); and *United States v. Valdivia–Valadez,* No. 98–50396, 2000 WL 125909 (9th Cir. Feb.2, 2000).

The following cases were remanded for the district court to consider the impact of *Almendarez–Torres:*

*United States v. Madrigal–Casares,* No. 98–50579, 1999 WL 273311 (9th Cir. Apr.22, 1999); *United States v. Jaimes,* No. 98–30236, 1999 WL 436094 (9th Cir. June 16, 1999); *United States v. Garcia–Villareal,* No. 99–50048, 1999 WL 512028 (9th Cir. July 16, 1999).

## IV

Rivera–Sanchez also appeals from the sentence imposed by the district court. He contends that the district court erred in refusing to depart downward from the Sentencing Guidelines based on the ineffective assistance of his counsel in advising him regarding the Government's offered plea agreement. He asserts that such ineffective assistance of counsel should be a ground for departure.

■ We decline to reach the merits of Rivera–Sanchez's argument because we lack jurisdiction under 18 U.S.C. § 3742(a) to review the district court's refusal to depart downward from the Sentencing Guidelines. We conclude that the district court's decision not to depart downward was discretionary and not based on its belief that it did not have the authority to do so. *See United States v. Eaton,* 31 F.3d 789, 792–93 (9th Cir.1994) (holding that a circuit court has no jurisdiction to review a district court's discretionary decision not to depart downward from the guidelines, but would have jurisdiction if the district court based its decision on the belief that it did not have the authority to depart). In fact, the court held a hearing to determine whether counsel was incompetent. Had the court not thought that it had the discretion to depart were it to find counsel incompetent, it would not have held a hearing.

At the sentencing hearing, the district court heard testimony from Rivera–Sanchez and Aguilar regarding Aguilar's efforts to communicate the Government's plea agreement to Rivera–Sanchez. The district court then heard argument from Mr. McNamara as to why Aguilar's efforts to communicate the plea agreement to Rivera–Sanchez amounted to ineffective assistance of counsel and why such ineffective assistance of counsel warranted a downward departure from the Sentencing Guidelines. During the course of argument the district court posed this question: "But the thing is how does this amount [to] ineffective assistance of counsel or anything else?" The court acknowledged the harshness of the sentences required by the Sentencing Guidelines but explained: "I don't see how this gets us anywhere where we could say, well that calls for a downward departure, because, you know, there's nothing there that would warrant a downward departure." In response to Mr. McNamara's argument that a downward departure was his client's only recourse to make up for his misunderstanding of the consequences of rejecting the plea agreement, the district court stated:

And I'm trying to figure out what's the basis for that. What's the basis for a downward departure? I mean he—the plea was explained to him, it was too much time, he rejected it, he said, hey, I don't want it. They talked to him several, twice at least according—they brought him down here to the courthouse to plead guilty, and he said, I reject it, I don't want this plea.

Finally, the court concluded:

But the fact is that I see nothing that Mr. Aguilar did that, at this point warrants a downward departure. Maybe I would have done it differently, you clearly did it differently, but there's nothing in there that warrants a downward departure, under the guidelines, under [K]oon, under anything else.

Although the district court did not specifically address its authority to depart downward on the basis of ineffective assistance of counsel, it is clear from the record that its refusal to depart downward was not based on a belief that it lacked the authority to depart downward for that reason, but rather, was an exercise of its discretion. *See United States v. Garcia–Garcia,* 927 F.2d 489, 491 (9th Cir.1991) ("Failure to depart without comment on the authority to do so does not convert a discretionary departure into a sentence imposed in violation of law."). The district court considered the arguments as to ineffective assistance of counsel and rejected them, finding instead that the defendant himself was responsible for his higher sentence by failing to accept the plea agreement. *See United States v. Dubose,* 146 F.3d 1141, 1143 n. 1 (9th Cir.1998) (holding that the district court's decision not to depart downward was discretionary and not reviewable where the court "considered the proffered reasons for departure but found them lacking").

The fact that the district court stated that it felt there was no "basis" for a downward departure and that a departure was "not warranted" does not indicate that the court believed it lacked authority to

depart downward for ineffective assistance of counsel. *See United States v. Robinson,* 958 F.2d 268, 272 (9th Cir.1992) (concluding that the district court was exercising its discretion in refusing to depart downward where the court "entertained briefs and oral arguments on the appropriateness of a downward departure, and concluded that under the circumstances a downward sentencing departure was 'not warranted' ") *abrogation on other grounds recognized in United States v. Newman,* 203 F.3d 700, 701 (9th Cir.2000); *see also United States v. Koenig,* 952 F.2d 267, 274 (9th Cir.1991) (holding that the district court's refusal to grant a downward departure was discretionary and not because it believed it lacked the authority to depart where the court assessed the facts of the case and concluded that the departure requested "does not seem ... to have a basis"). Neither does the court's sympathy for the defendant in light of the harshness of the sentence required under the Sentencing Guidelines, without more, indicate that the court would have departed downward, but believed that it lacked the authority to do so. *See United States v. Belden,* 957 F.2d 671, 676 (9th Cir.1992) (concluding that the district court's decision "did not appear to rest on the judge's belief that departure was prevented as a matter of law" where the judge stated that even though the sentence was harsh and he sympathized with the defendant, there was no basis for departure).

The fact that the district court made its decision without any argument from the Government that it lacked the authority to depart on the basis of ineffective assistance of counsel further supports the conclusion that the district court's decision was discretionary and not based on a belief that it lacked authority to depart. *See Garcia–Garcia,* 927 F.2d at 490–91 (noting that the Government did not oppose the defendant's request for departure on the ground that it lacked authority to entertain it and concluding that the court's refusal to depart downward was discretionary); *United States v. Webster,* 108 F.3d 1156, 1158–59 (9th Cir.1997) (noting that the Government did not argue that the court could not depart but argued that the facts did not warrant a departure, and concluding that there was no jurisdiction to consider the issue on appeal).

Finally, the district court's reference to its consideration of the Sentencing Guidelines in its decision supports the conclusion that the court simply found no basis for departing under the guidelines, not that the court believed it did not have the authority to do so. *See id.* at 1158 (concluding that the judge's comment that she searched the guidelines and did not see any grounds for departure indicated that she found no reason to depart, not that she believed she lacked the authority to do so). The court also indicated that it had considered *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), which affords the district court wide latitude to depart downward. This demonstrates that the district court was aware that it had the authority to depart but did not find a basis to do so in this case.

Thus, looking at the record as a whole, it is clear that the district court considered the testimony and arguments regarding the alleged ineffective assistance of Rivera–Sanchez's counsel in communicating with him regarding the plea agreement and concluded that it would not exercise its discretion to depart downward from the Sentencing Guidelines on that basis. There is nothing in the record that indicates that the district court refused to depart downward because it believed it lacked the authority to do so. We therefore lack jurisdiction to review Rivera–Sanchez's claim that the district court erred by failing to depart downward from the Sentencing Guidelines based on ineffective assistance of counsel.

V

We AFFIRM the judgment of conviction under 8 U.S.C. § 1326(a) because Rivera–Sanchez has failed to demonstrate ineffective assistance of counsel. We REMAND with instructions to the district court to

enter a corrected judgment of conviction which does not refer to § 1326(b)(2). We DISMISS the appeal from the district court's decision not to depart downward from the guidelines because we lack jurisdiction to review that discretionary decision.