**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Howard Eugene LEASURE,**
**Defendant–Appellant.**

**No. 01–50395.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2002.

Filed Feb. 10, 2003.

---

1. Judge Fisher was recused.

Alissa Sawano Peterson, Irvine, CA, for the appellant.

Debra Yang, United States Attorney; John S. Gordon, James M. Aquilina, Assistant United States Attorneys, Los Angeles, CA, for the appellee.

Before HALL, THOMPSON and WARDLAW, Circuit Judges.

## OPINION

WARDLAW, Circuit Judge.

Howard Eugene Leasure appeals his sentence and conviction for establishing a narcotics manufacturing laboratory in violation of 21 U.S.C. § 856(a)(2). Principally at issue is whether the government bears the burden of proving at sentencing that a convicted narcotics laboratory operator actually participated in the underlying drug offense under U.S.S.G. § 2D1.8. Leasure contends that imposing that burden upon the defendant is constitutionally defective as violative of his Fourteenth Amendment right to due process, his Fifth Amendment privilege against self-incrimination, and finally, his rights under the Grand Jury clause of the Fifth Amendment because participation, a fact that increases his sentence, was not charged in the indictment. Leasure also asserts (i) the invalidity of the search warrant for his premises as unsupported by probable cause; (ii) ineffective assistance of counsel in the pre-trial proceedings; (iii) insufficiency of the evidence presented at trial; (iv) error by the district court in failing to employ a heightened standard of proof to determine whether he participated in the underlying offense; and (v) error in the district court's drug quantity finding for sentencing purposes. We have jurisdiction pursuant to 28 U.S.C. § 1291 and, although we conclude that the district court erred by imposing the burden of proving nonparticipation upon the defendant, we affirm both the conviction and the sentence.

## I. BACKGROUND

In March of 1997, Howard Leasure and Nikolaus Kopp rented a barn and between 50 and 100 acres of surrounding property in San Luis Obispo, California. Leasure and his wife resided in a mobile home on the property. In May, Leasure negotiated a lease containing a provision that denied

the landlord access to the barn on the land, and subsequently placed a lock on its door. Leasure also asked the landlord to give notice before entering any of the remaining property, explaining the need for privacy as protection for Kopp, portrayed as an eccentric millionaire sculptor. Kopp, however, did not actually reside on the property. Leasure paid the initial deposit and the monthly rent in cash.

After Leasure initially leased the property, several skylights and tin panels were removed from the barn, allowing for better ventilation inside the structure. Leasure also borrowed a skidloader from the landlord, purportedly to patch ditches in the road and dig fence holes. However, rather than patch ditches or erect a fence, Leasure dug a large, five-foot-deep hole north of the barn. On July 19, 1997, a firefighter responding to a smoke alert on the property observed Leasure burning cans and bags similar to those used in the manufacture of methamphetamine.

Meanwhile, as part of an ongoing investigation of a group of Mexican nationals suspected of methamphetamine manufacture and distribution, Drug Enforcement Agency (DEA) agents monitored telephone conversations through a wiretap. The conversations revealed that the group was planning a trip to San Luis Obispo on September 11, 1997 to "cook" methamphetamine. San Luis Obispo narcotics officers monitored their journey, and uncovered the destination—the property Leasure had leased. On the day they were to arrive, their vehicle stopped at the property, but immediately drove away in a manner suggesting to the narcotics officers that their surveillance had been detected. The surveillance was then terminated.

Phone records continued to reveal communications among the drug suspects and Kopp. On March 10, 1998, the narcotics officers obtained a warrant to search the leased premises. The search of the barn uncovered an extensive array of items associated with the manufacture of methamphetamine. The search of two dump sites on the property, one being the hole dug north of the barn, revealed what the officers determined to be waste products of a large-scale methamphetamine manufacturing operation. Officers found chemicals used to extract methamphetamine and methamphetamine byproducts in Leasure's motor home.

Leasure was arrested and indicted for violating 21 U.S.C. § 856, knowingly maintaining a property for the manufacture of illegal narcotics. The prosecution offered to enter into a plea agreement whereby if Leasure pleaded guilty to the one-count indictment, the government would agree to a base offense level of 16, for which he would be sentenced in the range of 21 to 27 months. Leasure rejected the plea offer, consistently maintaining his innocence.

At trial, Leasure testified that he had no knowledge of any methamphetamine manufacture on the property. He explained that he used the property as a site for Native American religious rituals, and presented witnesses who testified that they had attended the rituals. Nonetheless, the jury convicted him of one count of violating § 856. Leasure, facing a twenty-year maximum sentence, moved to substitute counsel based on ineffective assistance at plea bargaining. The court granted the motion, and replaced defense counsel. It proceeded to conduct hearings on the effectiveness of Leasure's counsel at the plea negotiations. Finding no Sixth Amendment violation, the court held the sentencing hearing. Relying on the record of the trial over which it had presided, the court determined that Leasure participated in the underlying drug manufacture and, accordingly, sentenced him based on the quantity of drugs produced. Leasure

timely appeals his conviction and 188–month sentence.

## II. DISCUSSION

### A. Sentencing Guideline § 2D1.8

Because Leasure was convicted of operating a narcotics laboratory, his sentence is governed by United States Sentencing Guideline § 2D1.8, requiring the district court to determine whether Leasure actually participated in the underlying drug manufacturing. Section 2D1.8 dictates the offense level to be imposed as either:

(1) The offense level from § 2D1.1 applicable to the underlying controlled substance offense, except as provided below.

(2) If the defendant had no participation in the underlying controlled substance offense ... the offense level should be 4 levels less than the offense level from § 2D1.1 applicable to the underlying controlled substance offense, but not greater than level 16.

U.S.S.G. § 2D1.8 (1998). The district court determined that Leasure failed to meet his burden of proving that he did not participate in the underlying offense. Accordingly, it sentenced him under § 2D1.8(1), which refers the sentencing court to the drug quantity table found at § 2D1.1 to determine the offense level. Determining that 140 pounds of methamphetamine was manufactured on Leasure's property, the district court assigned a base offense level of 38 under § 2D1.1.

 At sentencing and on appeal, Leasure argues that the district court erred by requiring him to prove that he did not participate in the underlying offense, as the Guidelines place that burden on the government. Because the government presented no additional evidence at sentencing, he argues his base offense level should have been capped at 16 under § 2D1.8(2). In the alternative, Leasure argues that if the Guideline does place the

burden on the defendant, it is unconstitutional. We review both the interpretation, United States v. Alexander, 287 F.3d 811, 818 (9th Cir.2002), and the constitutionality of a Sentencing Guideline de novo, United States v. Mezas de Jesus, 217 F.3d 638, 642 (9th Cir.2000). While we have not previously decided this question, we agree with Leasure that the burden of proving participation for purposes of § 2D1.8 falls on the government. We affirm the sentence, however, because we find the error in his case to be harmless.

Section 2D1.8(a)(2) requires the district court to determine whether a defendant who managed an establishment used to manufacture drugs actually participated in the underlying drug offense, but is silent on who must prove this fact. We have held in general that the government bears the burden of proving facts necessary to establish or increase a defendant's base offense level, while the defendant must prove facts necessary to reduce the government's base offense level. See United States v. Montano, 250 F.3d 709, 713 (9th Cir.2001); United States v. Howard, 894 F.2d 1085, 1090 (9th Cir.1990) ("Since the government is initially invoking the court's power to incarcerate a person, it should bear the burden of proving the facts necessary to establish the base offense level."); United States v. Charlesworth, 217 F.3d 1155, 1158 (9th Cir.2000) ("[O]nce the government has established the base offense level, the burden falls on the party seeking to alter this level to prove the necessary facts."). Therefore, we must determine whether § 2D1.8 simply establishes a base offense level, which the government must prove, or if it provides for both a base offense level and a mitigating departure, which a defendant must prove.

The structure of § 2D1.8 in the context of the Guidelines as a whole strongly supports the conclusion that its purpose is to

establish a base offense level. Generally, the Guidelines subsections providing for establishing the base level fall under the heading "Base Offense Level." For departures from the base offense level for specific offense characteristics, the Sentencing Guidelines add a section entitled "Specific Offense Characteristics." *See, e.g.,* U.S.S.G. § 2E2.1 (establishing a "base offense level" of 20 for the crime of extortion and providing "specific offense characteristics," including use of a firearm and abduction, which increase that level); § 2G2.1 (establishing a "base offense level" of 27 for the sexual exploitation of a minor and providing "specific offense characteristics," including the use of the Internet, which increase that level); § 2J1.6 (establishing a "base offense level" of 11 for a defendant who failed to report for service of his sentence, and providing for the "specific offense characteristic" of voluntary surrender, which decreases that base offense level).[1] In stark contrast, § 2D1.8 contains no such subsection. Therefore, under § 2D1.8, the fact of participation is essential to establishing the base offense level— by importing it directly from § 2D1.1 if the defendant participated or by capping it if he did not. *See also United States v. Taylor,* 97 F.3d 1360, 1362 (10th Cir.1996) ("Under U.S.S.G. § 2D1.8(a)(1), the base offense level for [the] offense is predicated on the offense level applicable to the underlying controlled substance offense...."). Since the finding of participation is necessary to establish the base offense level, we hold that government bears the burden of proving it.

The Sentencing Guidelines' policies and purposes also lead to this conclusion. No other Sentencing Guideline is structured so as to place the burden on a criminal defendant to prove that he did not engage in an uncharged crime in order to establish a base offense level. Denied the opportunity to rebut the charge at trial, a criminal defendant is ill-suited to prove a negative at sentencing. *Cf. Bennett v. Mueller,* 296 F.3d 752, 763 (9th Cir.2002) ("If proof of the facts is inaccessible ... it is usually fairer ... to place the burden of proof and persuasion on the party claiming its existence.") (quoting 2 *McCormick on Evidence* § 337 at 431 (John W. Strong ed., 4th ed.1992)). In the interest of consistent application of the Guidelines and basic fairness to the defendant, we hold that the government must prove the facts relevant to obtain the base offense level it seeks. Of course, the government may address those facts during trial, and, if sufficient, trial evidence may satisfy the burden of showing participation in the underlying drug offense at the sentencing hearing.

While there is a paucity of published opinions interpreting § 2D1.8, one other circuit has addressed this issue. *United States v. Dickerson,* 195 F.3d 1183, 1189–90 (10th Cir.1999). Based on the overall structure of § 2D1.8, the Tenth Circuit reasoned that the Guideline created a rebuttable presumption that a defendant did participate in the underlying offense. *Id.* at 1190. Because that presumption leads to a higher base offense level, the court treated the element of nonparticipation as a mitigating factor. *Id.*

We find no support in the Guidelines for the Tenth Circuit's interpretation. The plain language of the Guideline does not create a presumption either way. Rather, it simply states that if a fact—nonparticipation—is present, a lower offense level should be calculated. There is no discussion of "presumptions" either in the Guideline itself or any commentary. Moreover,

---

**1.** *See also* U.S.S.G. §§ 2D1.10, 2D1.11, 2D1.12, 2E5.1, 2G1.1, 2G2.2, 2G2.4, 2G3.1, 2G3.2, 2H1.1, 2H3.1, 2H3.2, 2H4.1, 2H4.2, 2J1.2, 2J1.3, 2J1.4, 2J1.5, 2J1.9, 2K1.3 (2002) (same structure).

as we have already noted, § 2D1.8 does not separate the subsections by base offense level and specific offense characteristics like the other guidelines, which set an offense level and then indicate specific offense characteristics that might increase or decrease that level. The *Dickerson* court relies entirely on two cases that involve a defendant seeking a reduction from an already established base offense level, either through a downward departure or qualifying for a "specific offense characteristic." The first case, *United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999), interpreted the applicability of § 3B1.2, which provides for a downward departure from an already established base offense level for minor participants. The other case cited by the Tenth Circuit, *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990), interpreted subsection (b) of § 2K2.1, a Guideline which clearly separates subsection "(a) Base Offense Level" from "(b) Specific Offense Characteristics." *See* U.S.S.G. § 2K2.1. Indeed, the *Kirk* court's rationale for placing the burden on the defendant was to ensure that the "rule requires neither party to prove the negative of a proposition." *Kirk*, 894 F.2d at 1164. Were this a case of a defendant seeking a departure from a clearly established base offense level, we would agree with the Tenth Circuit that he bears the burden of proving he qualifies for such mitigation. However, because the purpose of § 2D1.8 is to establish a defendant's base offense level, the government must prove the fact of participation to avoid requiring a defendant to prove "the negative of a proposition."

The government's reliance on our statement in *United States v. Culps*, that "[t]he burden is on the defendant to establish that he did not participate personally in the underlying offenses [under § 2D1.8]," 300 F.3d 1069, 1082 (9th Cir.2002), is unavailing. There, the defendant was *convicted* of three counts of possessing and dis-

tributing narcotics as well as one count of maintaining a property used for the sale of narcotics. *Id.* at 1072. Leasure, on the other hand, was not even *charged* with the underlying drug offense. Because the government in *Culps* met its burden of proving participation in the underlying offense before a jury at trial, the question presented by Leasure's case—whether the government must prove, for sentencing purposes, that a defendant who was not convicted of the underlying offense actually committed it—was not before us. Considering the dispositive effect of this fact on the base offense level, we see no reason to depart from our sound rule that the government must prove it.

■ Thus we agree with Leasure that the district court erred by requiring him to prove at sentencing nonparticipation in the underlying offense. This error, however, is reviewed under the harmless error standard. A sentencing error is harmless if the district court "would have imposed the same sentence absent the errors." *United States v. Matsumaru*, 244 F.3d 1092, 1106 (9th Cir.2001) (internal quotation marks omitted). The evidence at trial of Leasure's participation in the manufacturing process was overwhelming. Even had the court properly placed the burden of proof on the government, that burden was met. As the district court, which presided over the trial, found, "[Leasure] absolutely was participating .... It's not even close." Indeed, the government was prepared to again present the witnesses who testified at trial but, in light of the overwhelming evidence of such participation, the district court precluded the government from doing so. Because the district court would have imposed the same sentence even if the burden of proving participation had been placed on the government, the error is harmless.

■ We need not reach the question of whether a heightened standard of proof

should be employed for finding participation under § 2D1.8, because the proof here was sufficient to meet either standard. Nor need we reach Leasure's challenges to the Guideline on Fifth and Fourteenth Amendment grounds. Leasure's Grand Jury Clause challenge is foreclosed by *Harris v. United States:*

> [A] judge may impose a sentence within a range provided by statute, basing it on various facts relating to the defendant and the manner in which the offense was committed. Though these facts may have a substantial impact on the sentence, they are not elements, and are thus not subject to the Constitution's indictment, jury, and proof requirements.

536 U.S. 545, 122 S.Ct. 2406, 2410, 153 L.Ed.2d 524 (2002). We therefore turn to Leasure's remaining claims of error.

## B. Validity of the Search Warrant

■ Leasure argues that the issuance of the search warrant on March 10, 1998 was not supported by probable cause because some of the information on which it was based, having been discovered six months earlier, was stale. We review a magistrate judge's finding of probable cause for clear error, according it significant deference. *United States v. Patterson,* 292 F.3d 615, 625 (9th Cir.2002).

■ While Leasure is correct that the initial investigation of the property began over six months prior to the search, that alone does not support his "staleness" argument. His argument is undermined by the fact that some of the information supporting the warrant was obtained weeks or days before the warrant was executed. The narcotics officer's affidavit in support of the warrant stated that three calls were made by members of the Mexican drug ring to Nikolaus Kopp, co-lessor of the property, during the last week of January. Agents had observed the property in January and March of 1998 and seen objects consistent with the manufacture of methamphetamine. The affiant also established a complex web of conspirators and clandestine laboratories that had required lengthy investigation. When an affidavit "establish[es] the existence of a widespread, firmly entrenched, and ongoing narcotics operation .... staleness arguments lose much of their force." *United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1566 (9th Cir.1989).

## C. Ineffective Assistance of Counsel

■ Leasure contends that the first Federal Public Defender to handle his case failed to competently inform him of the government's plea offer. Generally, we do not consider ineffective assistance claims on direct appeal, as collateral review provided by the writ of habeas corpus offers the appropriate forum to fully develop the record of counsel's performance. *Hoffman v. Arave,* 236 F.3d 523, 530 n. 7 (9th Cir.), *cert. denied,* 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001). Here, however, because the district court conducted a thorough inquiry in a post-trial proceeding, we find the record of the "ineffective assistance claim ... sufficiently developed to permit review." *United States v. Rivera–Sanchez,* 222 F.3d 1057, 1060 (9th Cir. 2000) (internal quotation marks omitted).

■ To prevail, Leasure must show both that defense counsel's representation was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Leasure claims that his attorney misled him about the likelihood of the district court imposing the sentence it did. However, Leasure's public defender did inform him of the offer of a reduced sentence in exchange for a guilty plea. He also told him that if he went to trial, he would face a maximum sentence of twenty years. When "[t]he

record shows that [defense counsel] informed[the defendant] of the crime alleged in the complaint, the sentence he would receive under the plea agreement, and that he faced a more severe punishment if he didn't accept the agreement," an alleged failure to adequately explain the operation of a Sentencing Guideline is not deficient. *Rivera–Sanchez,* 222 F.3d at 1061. Since the public defender informed Leasure of the possibility of the twenty-year statutory sentence, the district court did not err in finding that Leasure was not misled about the sentencing consequences. Thus, we cannot say that his counsel's performance was "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

## D. Insufficiency of the Evidence

 The government presented sufficient evidence at trial to convict Leasure of violating 21 U.S.C. § 856. It was required to show that Leasure (1) managed or controlled the relevant property during the time drug manufacturing was alleged; (2) made the property available to others; (3) others used the property for unlawfully manufacturing or storing methamphetamine; and (4) he knew of the activity and allowed it to continue. *See United States v. Tamez,* 941 F.2d 770, 773–74 (9th Cir.1991). Leasure contends that the government failed to prove both the manufacture of methamphetamine on the premises and his knowledge of this activity.

The government presented evidence that a skylight and several tin panels had been removed from the barn, providing the ventilation necessary for manufacture. Physical evidence obtained from a search of the property included respirators commonly used to protect methamphetamine cooks; cat litter and black hoses, used to mask smell; massive quantities of caustic soda; freon and hydrochloric acid cans with repainted labels; strong-smelling waste, some of which contained traces of methamphetamine byproducts; and many other items used in the manufacture of methamphetamine. The landlord testified that Leasure prevented the sale of the property through deception, refused to allow him to enter the property absent permission, installed a separate lock on the door to the barn, paid the monthly rent in cash, and was unable to pay the rent once police surveillance had been detected. Experts testified to the fact that the evidence recovered from Leasure's motor home indicated that it was the site of an extraction lab, as well as the likelihood that a manufacturing operation of this scale would have required four to eighteen full-time cooks and produced constant pungent odors.

Given that Leasure lived yards away from the site and was unemployed, a reasonable inference would be that he was aware of these activities. Viewed in the light most favorable to the government, the jury here could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Carranza,* 289 F.3d 634, 641–42 (9th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 572, 154 L.Ed.2d 458 (2002).

## E. Drug Quantity Determination

Leasure contends that the 140 pounds of methamphetamine that the district court determined as drug quantity was not a reasonably foreseeable part of a jointly taken criminal activity. *See* U.S.S.G. § 1B1.3(2) (defendant in a jointly undertaken criminal activity responsible for "all reasonably foreseeable acts and omissions of others").

 This argument fails because Leasure was convicted of knowingly maintaining a place for the purpose of manufacturing narcotics, so his conduct falls under § 1B1.3(1), not (2) (defendant is responsible for "all acts and omissions . . . aided by

the defendant"). Because Leasure was "directly involved" in the use of the property for methamphetamine manufacture, he is "accountable for all quantities of contraband." Commentary at Application Note 2; *see also United States v. Whitecotton*, 142 F.3d 1194, 1197–98 (9th Cir. 1998).

## CONCLUSION

Although the district court erred by placing the burden of proving nonparticipation upon Leasure under Sentencing Guideline § 2D1.8, in light of the overwhelming evidence implicating him in the manufacture of the methamphetamine, the error was harmless. Because we reject Leasure's remaining arguments, his conviction and sentence are

**AFFIRMED.**