**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 28, 2011

No. 09-31106

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THOMAS C. JOHNSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Thomas C. Johnson appeals his sentence for possession of a firearm by a convicted felon. He argues that the district court erred in fashioning an above-Guidelines sentence based in part on his record of prior arrests. We vacate the sentence and remand for resentencing.

I

While on patrol in New Orleans, two police officers encountered a group of young men who suddenly fled as the officers approached. Johnson was holding his pant leg as he ran and discarded a black and silver object in the yard

No. 09-31106

of a nearby residence. Both officers gave chase and ordered Johnson to the ground, but Johnson ignored the order and tried to escape by scaling a fence. One of the officers caught up with Johnson, who kicked and swung in his effort to escape, hitting the officer in the face. Johnson then climbed over the fence and escaped into a wooded area.

The officers eventually apprehended Johnson and recovered the object he had discarded—a semi-automatic pistol loaded with ten live rounds. Johnson had a prior felony conviction and was therefore prohibited from possessing any firearm. He pleaded guilty to one count of being a felon in possession, a violation of 18 U.S.C. § 922(g)(1).

Although Johnson was only twenty-four at the time, his presentence investigation report ("PSR") showed that he had three prior criminal convictions: two for possession of marijuana and one for possession of marijuana with intent to distribute. He was on probation for the most recent drug offense and faced a pending charge of burglary of an inhabited dwelling. Based on these and other factors, the district court calculated an advisory Guidelines range of 37 to 46 months, with a statutory maximum of ten years.

In addition, the PSR reported that Johnson had been arrested without conviction at least twelve other times since the age of fifteen. In five of those arrests, Johnson was charged with resisting arrest, obstructing an officer, or battery of an officer. The PSR listed only the most basic information about these prior arrests: the date, the charges, the agency out of which the arrest was processed, and the disposition (which in each case was "unavailable"). The PSR contained no information about the underlying facts or circumstances of the arrests and no explanation of why Johnson was not prosecuted. Neither party objected to the PSR, and the district court adopted its findings of fact.

The government moved for an upward variance, asking for a sentence of seventy months, on the grounds that Johnson fled from the police and disobeyed

2

orders to stop, struck an officer in the face while trying to escape, discarded a loaded firearm in a residential neighborhood, and repeatedly passed up opportunities to turn his life around after receiving probation in lieu of imprisonment for his three prior convictions. At the evidentiary hearing, the court heard testimony from the officer who chased Johnson on foot and from Johnson's mother, who testified that he was trying to get his life straight after the arrest.

At the sentencing hearing, the court noted Johnson's record of prior arrests and observed that the arrests described "multiple instances where it is reported that not only did [he] not comply [with the arresting officers], but, in fact, [he] resorted to violence against officers who were simply trying to do their job." The court was careful to caution that it did not "typically factor in arrests, and they're certainly not part of the criminal history calculation . . . , [b]ut nonetheless, it [was] not an instance of it happening once where perhaps there was a misunderstanding." The court later reiterated that "I generally would not value arrests at all in terms of sentencing, but in this instance that is a common thread that appears, not just once or twice." It thus reasoned that the number and pattern of similar arrests were sufficient to treat the arrest reports as reliable.

Johnson's counsel objected to the court's reliance on bare arrest records when those arrests did not result in convictions. Johnson tried to explain why he had been arrested so many times, saying that "in the neighborhood where [he] lived . . . if [young men] were just outside, the police would just pull up and take [them] out to jail for municipal charges just to take [them] off the street." He believed the officers reported that the young men had resisted arrest so the officers would have a reason to take them to jail. The court acknowledged that the weight given to arrest reports must be "somewhat discounted if they do not result in charges" and stressed that it had not "weighed [the arrests] heavily in

terms of fashioning a sentence in this case."  The court further explained that "the sentence is not based on the arrests," but rather "the fact[s] . . . recorded in connection with these arrests"—that is, "a repeated course of conduct that involves resisting or obstructing an officer."

The district court referenced the arrests yet again when it formally explained the basis for Johnson's sentence, although its principal focus was on the circumstances of the instant offense.  In the written Statement of Reasons, filed three days after the live hearing,[1] the court listed its reasons for electing an above-Guidelines sentence (emphasis added to denote the portion where the court discussed Johnson's arrests):

> The Court has considered, pursuant to 18 U.S.C. § 3553(a)(4), the sentencing range under the [Guidelines] applicable to this defendant, as well as the other statutory concerns found in § 3553(a).
>
> The Court finds that the sentence imposed reflects the nature and specific circumstances of the offense, the seriousness of this offense involving a firearm, in particular, and the defendant's criminal history.  It also promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public.
>
> Specifically, the Court notes that this is not a situation where a prohibited person merely possesses, but then relinquishes, a firearm to police without protest.  Rather, the defendant fled upon catching sight of the uniformed police officers, as well as the marked police vehicle, thereby requiring one of the officers to chase him. Further, in the course of that chase, the defendant discarded a loaded, semi-automatic pistol in the rear yard of a residence, where it could have presented a grave danger to the residents of that neighborhood, and/or others, if found by a child, some other person unknowledgeable about firearm safety, or another prohibited, or violent, person. Additionally, in trying to escape from Officer Young over an iron fence, the defendant, kicking his feet and swinging his

---

[1] The district judge also read a nearly identical statement into the record at the end of the sentencing hearing.

arms wildly, struck the officer in the face. Then, despite the pursuing officer's efforts to detain the defendant by applying "stun strikes" to his legs, the defendant still refused to surrender and instead managed to temporarily escape.

The Court also notes that, at the time of the instant offense, the defendant had been allowed probation, rather then [sic] imprisonment, on three separate occasions. Instead of taking advantage of these opportunities by adopting a productive, law-abiding lifestyle, the defendant was only intermittently employed, failed to make the regular fine payments as required by the conditions of his probation, failed to provide regular financial support of his child, *and engaged in conduct that resulted in his arrest and, in some instances, conviction.* Under all these circumstances, the Court finds that an upward variance is justified.

The court thus granted the motion for an upward variance and imposed a sentence of sixty-three months, seventeen greater than the advisory Guidelines range but seven less than the government's request. Johnson objected that his sentence was unreasonable because it was based in part on a series of arrests that did not result in convictions.

II

We review the reasonableness of a district court's sentencing decisions under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Under the Federal Sentencing Guidelines, courts were forbidden from considering a "prior arrest record itself" as the basis for an upward departure. U.S.S.G. § 4A1.3(a)(3). Although the Guidelines are now only advisory under *United States v. Booker*, 543 U.S. 220 (2005), all facts considered at sentencing must still be sufficiently reliable to satisfy due process. *See United States v. Watts*, 519 U.S. 148, 156 (1997) (per curiam); *United States v. Fulbright*, 804

No. 09-31106

F.2d 847, 853 (5th Cir. 1986); *see also United States v. Fields*, 483 F.3d 313, 337–38 (5th Cir. 2007).

Following *Booker*, we reaffirmed in *United States v. Robert Jones* that "[a]rrests, standing alone, do not constitute reliable information" for sentencing purposes. 444 F.3d 430, 434 (5th Cir. 2006). The district court in *Robert Jones* considered the defendant's record of prior arrests when selecting its sentence,[2] but there was no evidence corroborating the charges in those arrests except that the charged acts were similar to the current conviction. We held that it was error "to take the mere fact of prior arrests into account." 444 F.3d at 434.[3]

In *United States v. Earnest Jones*, 489 F.3d 679 (5th Cir. 2007), we reaffirmed that consideration of arrests at sentencing is error. The defendant had eleven prior arrests, three of which involved conduct similar to the offense for which he was being sentenced. As in this case, the district court considered the prior arrests when evaluating the Section 3553(a) factors, but it lacked any corroborating evidence for those charges aside from their similarity to the current conviction. We held that "[t]he district court's consideration, at sentencing, of prior arrests was plain error." *Id.* at 681 (citing *Robert Jones*, 444 F.3d at 436).[4]

---

[2] The defendant in *Robert Jones* was sentenced to the statutory maximum of 120 months. 444 F.3d at 433. The court noted that it was "unclear" whether this sentence was imposed as a Guidelines sentence, pursuant to the residual departure authority in U.S.S.G. § 5K2.0, or as a non-Guidelines sentence under the authority granted by *Booker*. *See id.* at 440–41.

[3] We nevertheless upheld the sentence because the defendant could not make a sufficient showing of prejudice under plain-error review. 444 F.3d at 436–38. The plain-error standard was appropriate in *Robert Jones* because the defendant had failed to object at sentencing to the consideration of his prior arrests.

[4] As in *Robert Jones*, however, we ultimately upheld the sentence because the defendant could not show a reasonable probability of prejudice on plain-error review. 489 F.3d at 682.

No. 09-31106

Both *Robert Jones* and *Earnest Jones* left room for a court to consider arrests if sufficient evidence corroborates their reliability,[5] a result in harmony with the Guidelines.[6] But both decisions also unmistakably held that without sufficient indicia of reliability, a court may not factor in prior arrests when imposing a sentence.[7] This comports with the due process requirement that sentencing facts must be established by a preponderance of the evidence. *See Watts*, 519 U.S. at 156; *Fulbright*, 804 F.2d at 853. We have long recognized that "an arrest, without more, is quite consistent with innocence." *United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir. 1978).[8] Thus, we now hold that for a

---

[5] *See Robert Jones*, 444 F.3d at 434 ("The district court did not find that Jones actually committed the rape of a child in 1993 or that Jones committed the sexual batteries of which he had been accused at the time of sentencing. Had there been such findings, supported by evidence, the district court could have considered those facts in determining the likelihood that Jones would commit crimes in the future. But absent such evidence and findings, it was error to take the mere fact of prior arrests into account."); *Earnest Jones*, 489 F.3d at 682 ("The court did not find that Jones actually committed the offenses for which he was arrested, and commented only that it seemed unlikely that he would have been arrested wrongfully so many times.").

[6] *See, e.g.*, U.S.S.G. § 4A1.3(a)(2)(E), (a)(3) (permitting consideration of "[p]rior similar adult criminal conduct not resulting in a criminal conviction" so long as it is evidenced by more than just a "prior arrest record itself"); *cf. United States v. Harris*, 932 F.2d 1529, 1539 (5th Cir. 1991) (affirming upward departure based in part on reliable evidence of prior uncharged conduct "nearly identical to the [activities] for which [the defendant] was charged and convicted").

[7] Thus in *United States v. Lopez-Velasquez*, we explained that "prior arrests, *standing alone*, are insufficiently reliable to justify an upward departure," even though "[i]t is well-established that prior criminal conduct not resulting in a conviction may be considered by the sentencing judge." 526 F.3d 804, 807 (5th Cir. 2008). In *Lopez-Velasquez*, the defendant's prior arrests were deemed reliable because the underlying charges were corroborated by more than a half-dozen deportations. *Id.*

[8] *See also United States v. Cantu-Dominguez*, 898 F.2d 968, 971 (5th Cir. 1990) ("[A] history of arrests that did not result in convictions . . . . is not the type of 'reliable information' that justifies a departure from the applicable sentencing range.").

No. 09-31106

non-Guidelines sentence, just as for a Guidelines sentence, it is error for a district court to consider a defendant's "bare arrest record" at sentencing.[9]

Here, the only indicium of reliability was the similarity of five of Johnson's arrests to the instant offense. In *Robert Jones* and *Earnest Jones*, neither defendant had been arrested more than three or four times for similar conduct, or more than eleven times in all, yet we held that consideration of those arrests, without some other supporting evidence, was plain error. It might be true, as two of our sister circuits have suggested, that "there may be situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore," *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009),[10] but that is not the case before us. Five similar arrests are not "overwhelming [evidence] of actual guilt" where the district court relies only on bare arrest reports and the defendant has articulated a plausible explanation for the arrests other than his guilt. It was therefore error to consider Johnson's prior arrests at sentencing.

III

A

Having determined that the district court erred, we must decide whether it would have imposed the same sentence had it not considered the arrests. *See Williams v. United States*, 503 U.S. 193, 203 (1992); *United States v. Ibarra-Luna*, 628 F.3d 712, 718 (5th Cir. 2010). The proponent of the sentence "must

---

[9] This holding resolves a question previously left open by *United States v. Williams*, 620 F.3d 483, 495 (5th Cir. 2010).

[10] *See also United States v. Zapete-Garcia*, 447 F.3d 57, 61 (1st Cir. 2006) ("[A] series of past arrests might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions.").

point to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." *United States v. Huskey*, 137 F.3d 283, 289 (5th Cir. 1998).[11]  The oral transcript from the sentencing hearing is not entirely clear, and the written Statement of Reasons lists "conduct that resulted in [Johnson's] arrest and, in some instances, conviction" among its long list of "additional facts justifying the sentence in this case."  On these facts, we are left uncertain as to whether the district court would have imposed the same sentence absent the arrests.  Because the burden falls on the proponent of the sentence to convincingly demonstrate that the sentence would have been the same, we must vacate Johnson's sentence and remand for resentencing.[12]

B

As we read his opinion, our dissenting colleague agrees that consideration of a bare arrest record at sentencing is error, but maintains that resentencing is not required here for two reasons.  First, the dissent contends that if the sentencing judge at any point remarks that "the sentence is not based on the arrests," then there can be no error—no matter what else the judge says at the

---

[11] *Accord*, *e.g.*, *United States v. Morales-Sanchez*, 609 F.3d 637, 641 (5th Cir. 2010); *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009).

[12] *Cf. United States v. Tello*, 9 F.3d 1119, 1131 (5th Cir. 1993) ("[W]e have neither found nor been shown anything in this record so clearly reflecting the sentencing motivation of the district court that would permit us to conclude that the same sentence would have been assessed absent the error.  Lacking such a determination, we cannot affirm the original sentence under a harmless error analysis.").

The dissent urges that our decision today is inconsistent with our earlier decision in *United States v. Williams*, 620 F.3d 483 (5th Cir. 2010).  The defendant in *Williams* failed to object at sentencing, so our review was only for plain error, which puts the burden on the defendant to demonstrate a "reasonable probability" that he would have received a lesser sentence.  *Id.* at 493–96.  In this case Johnson's counsel preserved the error, so the burden instead falls on the Government to prove that the error was harmless.  Because the record is at best unclear, the Government's burden is not met and resentencing is required.

sentencing hearing and no matter what he writes in the Statement of Reasons. We cannot agree with that proposition, either as a general matter or on the record here. Of the twenty-one pages of the sentencing hearing transcript discussing the upward variance, eight pages of discussion revolve around the arrests. The written Statement of Reasons also makes specific reference to the arrests as a basis for the sentence.[13] We need not engage in "psychoanalysis" to make the common-sense observation that, on this record, we cannot definitively rule out that the arrests were considered in sentencing.

The district court did explain that the sentence was not based on the arrests *per se*.[14] It then went on to say the sentence *was* based on "the fact[s] . . . recorded in connection with these arrests." That is, the sentence did consider *the underlying course of conduct* evidenced by the arrests—"multiple instances of . . . resisting [and] at least one instance of battery on a police officer," as the court proceeded to describe. The distinction is a sound one, and we do not question the district court's sincerity in applying it. But because there is no corroborating evidence of the past incidents except for the bare arrest records, which are themselves unreliable, the resulting sentence violates due process.

In the alternative, the dissent intimates that the error may not have affected the length of Johnson's sentence. Perhaps, but on this record, we cannot accept that suggestion with the certainty we are required to have. That said, even if the arrests may not have affected the precise length of the sentence, we

---

[13] The dissent observes that this reference to prior arrests spans only fourteen words. This is true, but such an accounting of words misses the point. A sentence based on unreliable evidence in any part violates due process. What matters is not the number of words devoted to the arrests, but that they were considered at all. In any event, if we were to count words, we might observe that the dissent stakes its claim on a mere eight words plucked out of a 5,000-word sentencing colloquy.

[14] The court drew a contrast with the Guidelines' criminal history calculation, where the mere fact of each prior conviction results in a *per se* increase in the defendant's criminal history points. *See* U.S.S.G. § 4A1.1.

explained in *Ibarra-Luna* that an error in selecting a non-Guidelines sentence may not be dismissed as harmless unless the proponent shows "both (1) that the district court would have imposed the same sentence had it not made the error, *and* (2) that it would have done so *for the same reasons it gave* at the prior sentencing." 628 F.3d at 714 (emphases added). When reviewing whether the district court abused its discretion, we must rely on the explanation the district court actually gave; it is not enough to hypothesize some other explanation that might render the sentence reasonable.[15]  *See id.* at 717; *cf. Gall*, 552 U.S. at 51 (instructing that a district court's "fail[ure] to adequately explain the chosen sentence" is reversible error, even where the court of appeals could hypothesize some adequate explanation).  The Statement of Reasons lists Johnson's prior arrests as one of its reasons supporting the sentence.  Hypothetical explanations are not before us, so we must vacate and remand for resentencing, where the

---

[15] As *Ibarra-Luna* explained, this limitation makes sense in light of the rigid procedures the Supreme Court has dictated for non-Guidelines sentences.  The district court must always begin by fully and correctly calculating the applicable Guidelines range, then it must explain on the record why it believes this range would not serve the sentencing goals listed in 18 U.S.C. § 3553(a). *See Gall*, 552 U.S. at 49–51.  These rigid procedures serve several purposes.  First, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" in every case. *Id.* at 49.  Second, these procedures "promote the perception of fair sentencing," *id.* at 50, and "assure[] reviewing courts (and the public) that the sentencing process is a reasoned process," *Rita v. United States*, 551 U.S. 338, 357 (2007).  Third, this process creates a record "to allow for meaningful appellate review" under the abuse-of-discretion standard. *Gall*, 553 U.S. at 50; *see also id.* at 51–52 (explaining that it is the province of the sentencing judge to fashion an appropriate sentence in each case); *Ibarra-Luna*, 628 F.3d at 717 (discussing importance of the record in abuse-of-discretion review).  These goals would be undermined if we were to affirm the sentence on some hypothetical basis without affording the district court an opportunity to walk through this process and to again consider—in its sound discretion and with the benefit of its greater familiarity with the facts—what sentence would be most appropriate.  We note that these same considerations may not always require resentencing for a within-Guidelines sentence, such as the sentence in *Williams v. United States*, 503 U.S. 193 (1992), because a sentence within the Guidelines range is understood to adopt the considered judgment of the Sentencing Commission and receives a presumption of reasonableness, *see Rita*, 551 U.S. at 347–51; *United States v. Rodriguez-Rodriguez*, 530 F.3d 381, 388–89 (5th Cir. 2008).

No. 09-31106

district court will consider in the first instance whether the same sentence is warranted without the arrests.

## IV

To be clear, we do not question the competency or the integrity of the district court.[16] To the contrary, we remand this case for resentencing precisely so that the able district judge may be entrusted, in his sound discretion, to select an appropriate sentence in light of our holding. Indeed, "we recognize the distinct possibility that the district court might again impose . . . the same [63-month] sentence it originally imposed." *United States v. Tello*, 9 F.3d 1119, 1131 (5th Cir. 1993). And should it do so, we are confident it will be on a record from which the uncertainties that crept in here have been vanquished. We accordingly VACATE and REMAND to the district court to consider the sentence anew.

---

[16] *Cf. Tapia v. United States*, 131 S. Ct. 2382, 2393, 2394 (2011) (Sotomayor, J., concurring) (expressing "skepticism that the District Judge violated [any] proscription in this case," yet acknowledging that remand is required because "his comments at sentencing were not perfectly clear").

No. 09-31106

JERRY E. SMITH, Circuit Judge, dissenting:

The panel majority—Judges Higginbotham and Elrod—declines to take District Judge Engelhardt at his word that "the sentence is not based on the arrests." Only a few months ago, in a factually indistinguishable case, the same two judges, as part of a unanimous panel, affirmed a sentence despite District Judge Zainey's consideration of bare arrests.[1] I accept and believe Judge Engelhardt's assurance that he did not use the bare arrests to decide the sentence he imposed. And even if he had, his awareness of the arrests did not affect Johnson's sentence, just as this panel majority believed that Judge Zainey's cognizance of the arrests did not influence Williams's sentence—even despite the absence of a flat statement of denial like Judge Engelhardt's. Because the majority's insistence on questioning Judge Engelhardt's pronouncement is nothing less than insulting micromanagement of a matter entrusted to the district court's sound discretion, I respectfully dissent.

I am confounded by the majority's result and reasoning. Where a district judge unequivocally states his reasoning when imposing a sentence, this court should not engage in psychoanalysis to create a question, where none exists, as to what he "really meant." This record plainly shows that Judge Engelhardt did not consider the arrests.

The government's motion for an upward variance did not mention the arrests but, instead, discussed the nature of Johnson's instant offense, his multiple drug convictions, and that he had committed the instant offense while on probation for his last conviction. Although Judge Engelhardt commented on the arrests during the hearing, he barely mentioned them while finally explaining his sound reasons for imposing an above-guideline sentence. Instead, he focused al-

---

[1] *See United States v. Williams*, 620 F.3d 483 (5th Cir. 2010) (Elrod, J.), *cert. denied*, 131 S. Ct. 1534 (2011).

13

most exclusively on the serious nature of the instant offense, including Johnson's violent battery of a police officer and discarding a loaded weapon in a residential neighborhood. Judge Engelhardt also noted "that, at the time of the instant offense, [Johnson] had been allowed probation, rather then [sic] imprisonment, on three separate occasions" and had failed to take "advantage of these opportunities by adopting a productive, law-abiding lifestyle." The court used 336 words in its Statement of Reasons; only 14 of those words—not even a full sentence—vaguely alluded to the arrests.[2]

The majority states that "[t]he oral transcript from the sentencing hearing is not entirely clear." There is, however, nothing uncertain about Judge Engelhardt's plain-as-day affirmation that "the sentence is not based on the arrests." We should read that assurance at face value: Judge Engelhardt said what he said and meant what he meant. His mention of the arrests was merely as further support for a sentence he would have imposed anyway.[3]

But, even if the court did consider the arrests, Johnson's sentence was not influenced by that improper factor. In *Williams*, Judge Zainey also took careful account of facts and considerations other than the bare arrests, and the panel concluded, 620 F.3d at 495, that "the district court's lengthy and weighted discussion of other significant, permissible factors belies Williams's argument that the alleged error affected his substantial rights." As here, the district court's cognizance of the bare arrests in *Williams* did not affect the sentence: "Although

---

[2] Judge Engelhardt's discussion of the arrests during the hearing did span eight pages, as the majority counters, but a large portion of that discussion involved Johnson and his lawyer's attempting to dissuade the court from considering the arrests and the court's assuring them that the sentence was not based on the arrests.

[3] *Cf. Tapia v. United States*, 131 S. Ct. 2382, 2392 (2011) (emphasizing that even though a court may not lengthen a prison term to promote rehabilitation, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs. To the contrary, a court properly may address a person who is about to begin a prison term about these important matters.").

No. 09-31106

the court took into account the rate of Williams's arrests in evaluating the need to protect the community from further crimes, it gave significant consideration to the egregious facts of the instant case . . . ." *Williams*, 620 F.3d at 496. "Williams has not demonstrated a reasonable probability that he would have received a lesser sentence but for the court's consideration of his 'bare' arrest record . . . . [The district court's] limited comment on his arrest record does not impugn its conclusion. . . ." *Id.*

The panel majority attempts to reconcile *Williams* with the contradictory position it takes now by saying that *Williams* was decided on plain-error review, so the burden was on the defendant to show that the district court had considered the arrests. But that fact is irrelevant, because the question in *Williams* and here is whether mere awareness of the bare arrest record *affected* the sentence. Other panels of this court, as well, have upheld sentences where bare arrests appeared in the record but did not affect the sentence.[4]

Because there was no error at all, there is no need to discuss the proper harmless-error standard. There is, however, a glaring problem with the majority's proposed standard. The majority states, in one portion of its opinion, that to prove harmlessness, the proponent must show (1) that the district court would have imposed the same sentence and (2) that it would have done so for *the same reasons* it gave at the prior sentencing. But that standard means that one could never show harmlessness if the district court considered an impermissible factor at sentencing. Luckily, the majority largely ignores that impossible standard and uses the proper test from *United States v. Ibarra-Luna*, 628 F.3d 712, 719 (5th Cir. 2010), namely whether the "sentence the district court imposed was not

---

[4] *See, e.g., United States v. Bosley*, 365 F. App'x 599, 600 (5th Cir. 2010) (per curiam) ("The district court mentioned the arrests in passing, but it twice stated that Bosley's prison disciplinary record alone was sufficient to justify the denial of relief and it also considered several other clearly permissible factors.").

influenced in any way by [consideration of the improper factor]."[5]  Based on the government's reasons for an upward departure, the seriousness of Johnson's offense, and Judge Engelhardt's assurance that he did not consider Johnson's arrest record, the sentence was not influenced in any way (as it also was not in *Williams*) by any consideration of the arrests.[6]

There was no error, harmless or otherwise.  What part of "the sentence is not based on the arrests" does the majority not understand?  I respectfully dissent.

---

[5] *See also Williams v. United States*, 503 U.S. 193, 203 (1992) (stating that the party defending the sentence shows harmlessness by persuading the court "that the district court would have imposed the same sentence absent the erroneous factor").

[6] The majority's reference to Justice Sotomayor's concurrence in *Tapia,* 131 S. Ct. at 2393, is a stretch.  In *Tapia*, the district court stated that the sentence had "to be sufficient to provide needed correctional treatment," *id.* at 2385, and that the "number one thing [was] the need to provide treatment," *id.* at 2392 (internal quotation marks omitted).  Judge Engelhardt attached no such importance to Johnson's arrests when articulating the reasons for the sentence.