# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 12, 2013

No. 12-60370

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CALVIN WINDLESS,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before HIGGINBOTHAM, OWEN, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A federal district court may not rely on "bare arrest records" when sentencing a defendant. The district court believed that it could rely on those records when crafting conditions of supervised release. We disagree.

**I.**

The Sex Offender Registration and Notification Act (SORNA) established "a comprehensive national system for the registration of [sex] offenders."[1] SORNA requires each state to maintain a statewide sex-offender registry.[2] It

---

[1] 42 U.S.C. § 16901.

[2] *Id.* §§ 16912(a), 16911(10)(A), 16925.

also compels each sex offender to register with each state in which he works or resides.[3] A person who fails to comply with one of SORNA's registration requirements is, in certain circumstances, guilty of a federal criminal offense under 18 U.S.C. § 2250.[4]

Calvin Windless is a sex offender.[5] In 1992, at fifteen years old, he kidnapped a seven-year-old girl and twice forced her to perform oral sex on him. Based on those actions, Windless was convicted of aggravated kidnapping and two counts of aggravated criminal sexual assault. He was paroled in 1997 and, after a brief return to prison, was released finally in 1999.

At some point after his release, Windless moved to Minnesota. He left Minnesota for Mississippi in 2010 and began working in Mississippi in 2011. Windless knowingly failed to register as a sex offender in Mississippi and, soon after indictment, pleaded guilty to violating § 2250(a). This case arises out of the sentencing proceeding that stemmed from that conviction.

In anticipation of Windless's sentencing, a probation officer prepared a Presentence Investigation Report (PSR). The PSR revealed that in 2008, Windless was convicted for violating Minnesota's "predatory offender" registration requirement after failing to update (and knowingly providing false information regarding) his address. The PSR disclosed no other convictions, however, putting aside numerous traffic infractions.

The PSR also noted that Windless had been arrested several times. In 1999, he was charged with criminal sexual assault by force or threat. In each of 2005, 2006, 2007, and 2008, he was charged with failure to register as a predatory offender. During the same 2008 incident, he was also charged with theft and driving while impaired.

---

[3] *Id.* § 16913(a); *see also United States v. Johnson*, 632 F.3d 912, 915 (5th Cir. 2011).

[4] *See Johnson*, 632 F.3d at 915; 18 U.S.C. § 2250.

[5] *See* 42 U.S.C. § 16911(1) (defining "[s]ex offender").

Several of these prior offenses were not accompanied by a description of Windless's alleged conduct. Regarding the 1999 arrest, the PSR read, "[a] collateral request from the Northern District of Illinois revealed this arrest. No further information is known about this arrest." The PSR described the 2007 arrest by noting that "[t]his arrest was located on the defendant's ATLAS computerized criminal records report. No additional information could be ascertained regarding this arrest." And of the conduct underlying the 2008 arrest, the PSR said only that "[d]etails of this offense are unknown. The defendant was represented by an attorney." In sum, three of the five arrests were included in Windless's PSR without a description of his alleged conduct.

Only one of the two other arrests was accompanied by a description of conduct suggesting Windless's guilt. The PSR provided inculpatory details surrounding Windless's 2005 charge for failure to register. It explained that while Windless was stopped for a traffic violation, officers discovered that he was a sex offender from Illinois. "Officers then arrested [Windless] and charged him with Failure to Register. [He] was later provided with additional information on where and how to register in Minnesota and the charges were not pursued."

The fifth and final arrest was accompanied by an exculpatory description of Windless's conduct. Regarding his 2006 arrest, the PSR explained that "police ran a criminal history check [on Windless] and found [he] was a sex offender from Illinois. [Windless] was arrested. Upon further investigation, it was discovered [that he] had registered at his current address in Minnesota and the case was closed as unfounded."

The district court expressly referenced Windless's arrests when explaining its sentencing decision. After discussing his convictions, the court noted:

> [T]here are a number of other arrests. Not convictions. I want to make that very clear. But there is an arrest that's in your presentence report in 1999, criminal sexual assault by force or threat, a failure to register charge in . . . 2005, another charge in 2006, a charge in 2007, and a charge in 2008.

Windless contemporaneously objected to the district court's reliance on these arrests. The district court replied:

> And, certainly, the Court understands that I must not consider an arrest in fashioning a sentence, because he is just as likely to be innocent as guilty of that because there was no disposition of it, and, therefore, it would be like looking into a crystal ball to see what the outcome would have been.
>
> But under these circumstances and because we're not looking at a sentence but we're looking at the special conditions, are they warranted under the circumstances? I feel compelled to look at the entire criminal history of this defendant, and looking at that history, including the arrest, I think these conditions are not only reasonable, but they're necessary.

The court sentenced Windless to thirty months of imprisonment and ten years of supervised release. On appeal, Windless challenges only the "special conditions" of that supervision.

The district court imposed two such conditions. Specifically, it ordered that:

1.  The defendant shall participate in a mental health treatment program . . . which may include polygraph examinations, mental health treatment, and/or a specifically designed program to address sex offender treatment, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer.

2.  The defendant shall have no direct or indirect contact with any children under the age of 18, unless accompanied and supervised by an adult, who has been approved in advance by the probation officer. The defendant shall immediately report any unauthorized contact with children to the probation officer.

Windless acknowledges that the Guidelines recommend that "[i]f the instant offense of conviction is a sex offense," the conditions of release should include a requirement that the defendant "participate in a program approved by the United States Probation Office for the treatment and monitoring of sex

offenders."[6] But he contends that failure to register is not a "sex offense" and, in any event, that the conditions of his release are substantively unreasonable. Most importantly, Windless argues that the district court erred by relying on bare arrest records at sentencing.

## II.

We will reverse a district court's sentencing judgment if and only if the district court abused its discretion.[7] A district court abuses its sentencing discretion when it makes a significant procedural error,[8] orders a substantively unreasonable sentence,[9] or imposes sentence in a manner inconsistent with a defendant's right to due process.[10]

## III.

### A.

Due process requires "that sentencing facts . . . be established by a preponderance of the evidence."[11] Accordingly, a district court may not rely on

---

[6] U.S.S.G. § 5D1.3(d)(7)(A).

[7] *Gall v. United States*, 552 U.S. 38, 51 (2007).

[8] *United States v. Rodriguez*, 558 F.3d 408, 411–12 (5th Cir. 2009).

[9] *Id.* at 411–12.

[10] *See United States v. Johnson*, 648 F.3d 273, 277–78 (5th Cir. 2011); *cf. Pepper v. United States*, 131 S. Ct. 1229, 1240 n.8 (2011) ("[S]entencing courts' discretion . . . is subject to constitutional constraints."). The Supreme Court has instructed that when reviewing a sentence, we "must first ensure that the district court made no significant procedural errors." *Gall*, 552 U.S. at 51. But it has never held that we must address a procedural sentencing question whose answer will have no outcome on the case. *Cf. Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (recognizing appellate court discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first.").

[11] *Johnson*, 648 F.3d at 277.

a "bare arrest record" at sentencing.[12] An arrest record is "bare" when it refers to the "to the mere fact of an arrest—*i.e.*[,] the date, charge, jurisdiction and disposition—without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest."[13] By contrast, an arrest record is not bare when it is accompanied by "a factual recitation of the defendant's conduct that gave rise to a prior unadjudicated arrest" and "that factual recitation has an adequate evidentiary basis with sufficient indicia of reliability."[14] "If the factual recitation lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence."[15]

Three of Windless's arrest records were bare. The first stated that "[a] collateral request from the Northern District of Illinois revealed this arrest. No further information is known about this arrest." The second added that "[t]his arrest was located on the defendant's ATLAS computerized criminal records report. No additional information could be ascertained regarding this arrest." And the third admitted that "[d]etails of this offense are unknown. The defendant was represented by an attorney."

The district court relied on these arrest records. It explained that it was "sentencing [Windless] at the higher end of the sentencing guideline range because [it noted] that [he had] a previous conviction for failure to register as well as other offenses and charges on—arrests on failure to register." The prosecutor understood "the Court [to be] taking into consideration not just the [kidnapping and sexual assault] offense in '92, but [also Windless's] entire

---

[12] *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012).

[13] *Id.*

[14] *Id.* at 231.

[15] *Id.*

criminal history . . . which involves the . . . criminal sexual assault [arrest] . . . and the other arrests for failure to register." In response to that statement, Windless objected to consideration of his arrest records. Rather than disavow its reliance on those records, the court attempted to justify considering them. It explained, "the Court understands that I must not consider an arrest in fashioning a sentence, . . . [b]ut under these circumstances and because we're not looking at a sentence but we're looking at the special conditions, are they warranted under the circumstances? I feel compelled to look at the entire criminal history of this defendant . . . including the arrest." Although the district court said "arrest" instead of "arrests," nothing suggests that the district court was relying only on the non-bare, 2005 arrest—which the court never identified as uniquely worthy of consideration. We therefore conclude that the district court relied on three bare arrest records.[16]

This reliance was error. The district court attempted to justify its reliance by distinguishing between "special conditions" of release and a defendant's "sentence." But that distinction is illusory: supervised release and its conditions are part of a defendant's sentence.[17] Regardless, the same due process concerns that bar imposing a "sentence" based on bare arrest records apply to supervised release—which works a "substantial restriction of freedom."[18] In short, whether ordering a term of imprisonment or conditions of supervised release, a district court may not rely on bare arrest records.[19]

---

[16] *Cf. Johnson*, 548 F.3d at 279 ("[W]e cannot definitively rule out that the arrests were considered in sentencing."); *id.* at 281 (Smith, J., dissenting) (noting that the sentencing judge expressly claimed that "the sentence is not based on the arrests").

[17] *See* 18 U.S.C. § 3583(a) (authorizing supervised release "as a part of the sentence"); *United States v. Gonzalez*, 250 F.3d 923, 928 (5th Cir. 2001); *see also Gall,* 552 U.S. at 48.

[18] *Gall*, 552 U.S. at 48 (internal quotation marks omitted) (citation omitted).

[19] We have acknowledged that "[i]t might be true" that "'there may be situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult

This error was not harmless. Consider this statement from the district court, with the three bare arrest records (and the exculpatory arrest record) struck through: "there is ~~an arrest that's in your presentence report in 1999, criminal sexual assault by force or threat,~~ a failure to register charge in . . . 2005~~, another charge in 2006, a charge in 2007, and a charge in 2008~~." As Windless's criminal history appears quite different when his improperly considered arrests are ignored, we cannot be "[]certain as to whether the district court would have imposed the same sentence absent the arrests."[20] We therefore hold that the district court erred by relying on bare arrest records when determining Windless's conditions of supervised release.

## B.

We also hold that the "no direct or indirect contact" condition was flawed by substantive error. A district court has discretion to craft conditions of supervised release, even if the Guidelines do not recommend those conditions.[21] The district court abused its discretion here, however, because this condition was substantively unreasonable.

In the district court, Windless argued that this restriction on "direct or indirect contact" swept so broadly that it would effectively prohibit him from going to the grocery store unaccompanied. The district court did not express

---

to ignore.'" *Johnson*, 648 F.3d at 278 (citation omitted). This case does not present such a situation, *cf. United States v. Jones*, 489 F.3d 679 (5th Cir. 2007), and the government does not contend otherwise.

[20] *Johnson*, 648 F.3d at 278.

[21] *See United States v. Weatherton*, 567 F.3d 149, 152–53 (5th Cir. 2009). Windless argues that the district court procedurally erred by treating his failure to register as a "sex offense." But even for sex offenses, the Guidelines do not recommend this condition of supervised release. *See* U.S.S.G. § 5D1.3(d)(7). Accordingly, because the district court did not impose this condition because of the Guidelines, any "sex offense" procedural error was harmless with respect to this condition. *See United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009) (recognizing that procedural error may be harmless).

8

disagreement with that understanding. Nor can we. A restriction of this breadth works a "greater deprivation of liberty than is reasonably necessary"[22] where, as here, a defendant is being sentenced for failing to register as a sex offender; the offense that required him to register is not of recent origin; and since that offense, he has committed no other crimes against minors,[23] and the evidence suggests that he has failed to register only twice before. Although it does not affect our holding, we further note that here, the defendant committed the underlying sex offense when he was only fifteen years old, and that this condition would prevent him from *ever* seeing his minor children without the supervision of someone approved by a probation officer.

Circumstances may, of course, permit a sentencing court to limit an offender's access to places where children are likely to be unsupervised or poorly supervised. It may be reasonable to bar an offender from initiating unsupervised or poorly supervised contact with others' children and reasonable to require him to report contact that children initiate. But to forbid all "indirect" contact works a serious restriction on liberty, making a trip to the grocery store or a place of worship a trip that may end in imprisonment via revocation sentence. We trust that the district court will carefully address these considerations on remand—if it decides that, with bare arrest records out of mind, such conditions are appropriate at all.[24]

---

[22] *Weatherton*, 567 F.3d at 153 (internal quotation marks omitted) (citation omitted).

[23] We mean this colloquially and express no opinion concerning whether failure to register is "an offense . . . perpetrated against a minor." U.S.S.G. § 5D1.2 cmt. 1.

[24] *See United States v. Goodwin*, 12-2921, 2013 WL 1891302 (7th Cir. May 8, 2013) ("In assessing the appropriateness of special conditions, it . . . is useful to consider the rehabilitative objectives that supervised release serves. Placing unduly harsh conditions on supervised release would, instead of facilitating an offender's transition back into the everyday life of the community, be a significant barrier to a full reentry into society." (internal quotation marks omitted) (citation omitted) (alteration marks removed)).

**\* \* \***

We VACATE imposition of the mental-health treatment condition and REMAND for resentencing. We REVERSE imposition of the "no direct or indirect contact" condition, which the district court may not impose (as currently phrased) on remand.