# United States Court of Appeals
## For the First Circuit

No. 20-2063

UNITED STATES OF AMERICA,

Appellee,

v.

HANNAH PATCH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Ralph A. Jacobs for appellant.
Benjamin M. Block, Assistant United States Attorney, with
whom Donald E. Clark, Acting United States Attorney, was on brief,
for appellee.

August 16, 2021

**SELYA**, **Circuit Judge**.  This sentencing appeal turns not on what the record shows but, rather, on what the record fails to show.  The paucity of the evidence on the critical issue requires us to vacate the defendant's sentence and remand for resentencing.

Inasmuch as this appeal trails in the wake of a guilty plea, we draw the facts needed to put it into perspective from the change-of-plea colloquy, the undisputed portions of the presentence investigation report (PSI Report), and the sentencing transcript.  See United States v. Rivera-González, 776 F.3d 45, 47 (1st Cir. 2015); United States v. Del Valle-Rodríguez, 761 F.3d 171, 173 (1st Cir. 2014).

On February 8, 2019, a federal grand jury sitting in the District of Maine charged defendant-appellant Hannah Patch, then age 22, in a single count of a multi-count superseding indictment.  Specifically, the grand jury charged the defendant with maintaining a drug involved premises in Springvale, Maine, during the spring and summer of 2018.  See 21 U.S.C. § 856(a)(2).  The government's evidence showed that the defendant had leased an apartment as her place of residence and that, while living there, she had allowed her boyfriend, Joshua Weldon, to use the apartment as a base of operations for his drug-trafficking activities.

After some preliminary skirmishing, not relevant here, the defendant pleaded guilty to the lone count lodged against her.  The defendant admitted the truth of the prosecution's version of

- 2 -

the relevant events. Her admissions confirmed that, with her knowledge, the drug-trafficking ring headed by her boyfriend had stored and processed controlled substances at her apartment and had distributed such substances from that location.

The district court proceeded to order the probation department to prepare the PSI Report. When submitted, the PSI Report disclosed that the defendant not only was aware of the drug-related activities taking place in her home but also had accompanied Weldon on several resupply trips to Lawrence, Massachusetts. The probation department recommended a series of guideline calculations, and the defendant objected to several of those calculations.

The district court convened the disposition hearing on October 20, 2020. One area of disagreement focused on USSG §2D1.8(a). That guideline provides that the base offense level (BOL) for the defendant's offense of conviction — maintaining a drug involved premises, 21 U.S.C. § 856(a)(2) — shall be:

(a) Base Offense Level:

(1) The offense level from §2D1.1 applicable to the underlying controlled substance offense, except as provided below.

(2) If the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises, the offense level shall be **4** levels less than the offense level from §2D1.1 applicable to the underlying controlled substance offense, but not greater than level **26**.

After hearing the parties, the court found that the defendant's culpable "involvement was more than simply maintaining premises" because "she was involved in the sense of maintaining the premises and being present and being in the trips for resupply." Consequently, the court found that the offense-level cap under USSG §2D1.8(a)(2) did not apply.

With additional adjustments, none of which needs to be recounted here, the court set the defendant's total offense level at 23 and assigned her to criminal history category I. The court then varied downward by two levels based on the youthful age at which the defendant became romantically entangled with Weldon and the effect of that relationship on her conduct. See USSG §5H1.1. Following this downward variance, the defendant's total offense level was 21, which — combined with her placement in criminal history category I — yielded a guideline sentencing range (GSR) of 37-46 months. The court proceeded to sentence the defendant to a below-the-range term of immurement of thirty-four months, to be followed by a three-year term of supervised release. This timely appeal ensued.

In this venue, the defendant assigns two claims of sentencing error. First, she submits that the district court erred by declining to apply the offense-level cap limned in section 2D1.8(a)(2). Second, she submits that the district court erred by

applying a two-level enhancement under USSG §2D1.1(b)(12) because the ongoing drug activity did not amount to a primary or principal use of the apartment. See id., cmt. n.17 (explaining that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses").

These assignments of error implicate different standards of review. The defendant's first assignment of error was raised below and, therefore, is reviewed for abuse of discretion.[1] See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). In contrast, her second assignment of error is raised for the first time on appeal. If not waived (as the government contends), review is solely for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

We begin — and end — with the defendant's first assignment of error. The district court calculated the drug weight of the trafficked drugs, including an allowance for conversion of cash found in a warrant-backed search of the apartment, to be

---

[1] The abuse-of-discretion standard is not one-dimensional. Under that standard, "we review the sentencing court's findings of fact for clear error and questions of law . . . de novo." United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020).

4,365.84 kilograms of converted drug weight. This drug weight ordinarily would call for a BOL of 32, see USSG §2D1.1(c)(4), for a defendant who was guilty of maintaining a drug involved premises. Withal, USSG §2D1.8(a), quoted above, bifurcates the calculation of the BOL in such cases. Under subsection (a)(1), the BOL is premised on the calculated drug weight of the drugs involved in the underlying drug operation. If (a)(2) applies, however, the BOL is capped at 26.

The essence of the defendant's claim is that she should have received the benefit of the offense-level cap. She did not, she contends, participate in the drug operation beyond simply permitting her apartment to be used by the drug ring. The district court rejected this contention, citing evidence in the record that the defendant had accompanied Weldon on several automobile trips from Springvale, Maine to Lawrence, Massachusetts to re-stock drug inventory.

The central question on appeal reduces to whether the record evidence, including reasonable inferences therefrom, supports the district court's determination that the defendant, above and beyond the provision of her apartment as a drug involved premises, can be said to have participated in the drug operation. See USSG §2D1.8(a)(2); see, e.g., United States v. Dengler, 695 F.3d 736, 739 (8th Cir. 2012). The courts of appeals are divided as to which party bears the burden of proof on this issue. Compare

In re Sealed Case, 552 F.3d 841, 846-47 (D.C. Cir. 2009) (placing burden of proof on government) and United States v. Leasure, 319 F.3d 1092, 1096-98 (9th Cir. 2003) (same), with United States v. Dickerson, 195 F.3d 1183, 1189-90 (10th Cir. 1999) (placing burden of proof on defendant). Much depends on whether subsection (a)(1) is viewed as an enhancement or, conversely, whether subsection (a)(2) is viewed as a downward adjustment. See Leasure, 319 F.3d at 1096; see also United States v. Ortiz, 966 F.2d 707, 717 (1st Cir. 1992). This court has not spoken to the issue, and we need not do so today: the government has conceded, for purposes of this case, that it bears the burden of proving that the subsection (a)(2) cap is not applicable, and we proceed with that concession in hand.

Typically, we give the language used in guideline provisions its plain and ordinary meaning. See United States v. Brewster, 1 F.3d 51, 54 (1st Cir. 1993). In common parlance, the word "participation" means "taking part with others in an activity." Participation, Webster's Third New Int'l Dictionary (1981). It follows that the government had the burden in this case to prove by a preponderance of the evidence that the defendant "took part with others" in the drug operation in some way other than her mere provision of the apartment for drug involved activity.

On this question, the record evidence is thin. The only evidence is that the defendant accompanied Weldon on a few occasions when he drove from Maine to Massachusetts to pick up drugs from his supplier. There is no evidence that her presence on these jaunts furthered the drug operation: the record does not show, say, that she drove the car, served as a lookout, or interacted with the supplier. For aught that appears, she was merely along for the ride as a passenger in the vehicle. Nor does the record give any indication that her presence on these trips differed in any way from her presence in the car on other (non-drug-related) occasions, such as when she and Weldon drove together on social outings, on trips to the supermarket, or the like. In short, the record shows only that the defendant was present on the resupply trips, and we think that mere presence at the scene of criminal activity is insufficient to show participation. See United States v. Hunt, 487 F.3d 347, 351 (6th Cir. 2007) (enumerating possible forms of participation); cf. United States v. Hyson, 721 F.2d 856, 862 (1st Cir. 1983) (reversing drug conviction because evidence showed only mere presence).

To be sure, we previously have distinguished between "mere presence" and "culpable presence" in the context of drug-trafficking activities. See United States v. Paulino, 13 F.3d 20, 25 (1st Cir. 1994). Although mere presence will not suffice to sustain criminal charges, "a defendant's presence at the point of

- 8 -

a drug sale, taken in the light of attendant circumstances, can constitute strong evidence of complicity." United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993). By way of illustration, we have ruled that, when a defendant was a passenger in a car during a drug transaction, evidence that he participated in a conversation between the seller and the buyer while sitting in the car supported a finding of complicity. See Ortiz, 966 F.2d at 712-13. This is so, we said, because it reasonably can be assumed that "criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before larger-than-necessary audiences." Id. at 712.

Here, however, the Ortiz inference is of no assistance. After all, the defendant is not a person claiming to be innocent of any knowledge of drug activities. She admittedly made her apartment available for use by the drug ring. The only question is whether she participated in any other or further way to advance the business of the drug operation. So the Ortiz inference — which might have helped to prove that Weldon would not have taken her on the trips if she was unaware of its purpose — tells us nothing about whether the defendant "otherwise participated" in the drug operation. Without the benefit of the Ortiz inference, the record evinces no actions by the defendant and no interactions between her and her boyfriend from which a court reasonably can infer participation. Because the attendant circumstances do not differ

from those surrounding an innocent car ride, there is no basis to find, by preponderant evidence, that her presence was anything other than innocent.

In addition to the ride alongs, the district court also noted that the defendant "certainly was aware of what was going on" and "was involved in the sense of maintaining the premises and being present." But knowledge, like mere presence, is insufficient to show participation in the drug operation. See Altamirano v. Gonzales, 427 F.3d 586, 591-92 (9th Cir. 2005) (concluding that presence in an automobile, without more, is not a sufficient affirmative act to constitute participation in criminal conduct even if passenger is aware of criminal conduct by others). After all, evidence that a defendant had knowledge of criminal activity does not supplant the need for evidence that she took some steps to assist in that activity. See United States v. Luciano-Mosquera, 63 F.3d 1142, 1151 (1st Cir. 1995).

This is not a case in which some other person's actions can be imputed to the defendant. The core requirement of section 2D1.8(a) is that a defendant can be denied the safe harbor of subsection (a)(2) only if she personally participated in the drug operation in some way, apart from providing her apartment for the drug ring's use. To construe the participation requirement more broadly would render subsection (a)(2) meaningless because — in any case in which a conviction is obtained under 21 U.S.C.

- 10 -

§ 856(a)(2) — there will always be some use of the premises by some person implicated in the drug operation.

The sockdolager here is that the government has conceded that it had the burden of proving that subsection (a)(2) does not apply. The Supreme Court has made it pellucid that "if the evidence is evenly balanced, the party that bears the burden . . . must lose." Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries, 512 U.S. 267, 272 (1994). This principle applies with undiminished force in criminal proceedings. See, e.g., Kirkland v. United States, 687 F.3d 878, 890 (7th Cir. 2012) (setting aside sentence enhancement based on "ambiguous record" where government bore burden of proof); United States v. Johnson, 648 F.3d 273, 278-79 (5th Cir. 2011) (concluding that because record on crucial issue was unclear and because government bore burden of proof on that issue, defendant's sentence had to be vacated); Jake v. Herschberger, 173 F.3d 1059, 1067-68 (7th Cir. 1999) (determining, in habeas context, that "record [was] unclear one way or the other" on particular issue, that government bore burden of proof on that issue, and that, therefore, habeas petitioner must prevail).

This is an even stronger case for the defendant. The record, shorn of guesswork and speculation, simply does not permit a reasoned determination that the defendant participated in the drug operation within the meaning of USSG §2D1.8(a)(2). Given

such lack of evidence, the party bearing the burden of proving the existence of an occurrence surely cannot prevail. It follows that the district court's decision that the offense-level cap did not apply cannot stand.

In view of this holding, we see no reason to reach the defendant's second assignment of error. The applicability of the offense-level cap will — as the parties have recognized — make the section 2D1.1(b)(12) enhancement moot. Given that reality, no useful purpose would be served by us either attempting to resolve the waiver question or plunging into the applicability vel non of the enhancement.

We need go no further. The Supreme Court has left no doubt that a properly calculated guideline range is the starting point for most sentences imposed — as was this one — under the advisory sentencing guidelines. See Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016); see also Rosales-Mireles v. United States, 138 S. Ct. 1897, 1907-08 (2018). The sentencing error that we have identified resulted in an increased BOL, which led in turn to a miscalculated GSR. Accordingly, the defendant's sentence must be vacated and the case remanded for resentencing. Even if the sentence imposed is within or below a properly calculated GSR, that circumstance alone is insufficient to avoid the need for resentencing. See Molina-Martinez, 136 S. Ct. at 1345.

**Vacated and remanded**.