# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30275
c/w No. 13-30280
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 14, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RAMON ANDERSON,

Defendant-Appellant

Appeals from the United States District Court
for the Middle District of Louisiana
USDC No. 3:11-CR-96-1
USDC No. 3:11-CR-147-1

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Ramon Anderson appeals his conviction and sentence for possession of a firearm by a convicted felon and the sentence imposed following his guilty plea conviction for failure to register as a sex offender in violation of the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250. Anderson challenges the district court's denial of his motion to suppress evidence

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

obtained during the traffic stop that led to his arrest on the firearm charge and the imposition of a 13-month upward departure or variance from his guidelines sentence range.

On review of the denial of a motion to suppress evidence obtained from a traffic stop, we review findings of fact for clear error, "but the ultimate question of whether those facts add up to establish an appropriate level of reasonable articulable suspicion of criminality or danger is a question of law, reviewed de novo." *United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010). "A finding is clearly erroneous only if the court is left with a definite and firm conviction that a mistake has been committed." *Id.* at 440.

Anderson maintains that the district court clearly erred by finding that the traffic stop occurred at 6:45 AM, before sunrise, because Alonda Young, the police dispatcher, testified that she could not be certain that the indication in the computer aided dispatch (CAD) report that the traffic stop began at 6:45 AM was the traffic stop of Anderson or a different traffic stop close in place and time. He contends that the testimony of Corporal Neil Porter, the officer who made the traffic stop, and the CAD report showed that Anderson was arrested at 7:20 AM and that the estimate that Corporal Porter made in the police report that the traffic stop began 15 minutes earlier, at 7:05 AM, was more consistent with the evidence regarding the traffic stop than the district court's finding that the traffic stop began 35 minutes earlier at 6:45 AM. Anderson maintains that there was no justification for the initial traffic stop because it was after sunrise and the justification given of a violation of Louisiana Revised Statutes § 32:301 for failing to display headlights between sunset and sunrise was not applicable. He asserts that even if the time of the traffic stop was 6:45 AM, before sunrise, the traffic stop was not justified because he was parked

when Corporal Porter first encountered him and had traveled less than one block on a residential street when Corporal Porter initiated the traffic stop.

Anderson asserts that the traffic stop was unreasonably prolonged beyond the time needed to resolve the failure to display headlights issue. He contends that his hand movement was reasonably explained as an attempt to put on his seat belt. He argues that the area where he was stopped was not a high crime area because Corporal Porter acknowledged that it was a residential street with single family homes and big yards. He maintains that his presence in a vehicle with a woman at 7:00 AM does not show that illegal activity such as prostitution was occurring and that he explained that his fly was open because he forgot to zip it after using the bathroom.

The Fourth Amendment guarantees individuals the right "'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011) (quoting U.S. Const. amend. IV). "The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment." *Macias*, 658 F.3d at 517 (internal quotation marks and citation omitted). We analyze the legality of traffic stops for Fourth Amendment purposes under the standard established by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), and *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). *Macias*, 658 F.3d at 517. First, we examine whether the officer's action was justified at its inception, then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *Id.* Then we inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *Id.* "An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time

needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime. In such an instance, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *Id.* (internal quotation marks and citation omitted).

Young's testimony regarding whether the initial call in of a traffic stop at 6:45 AM was definitely the traffic stop of Anderson was equivocal. However, her testimony was clear that a call in of a traffic stop was computer dated as occurring at 6:45 AM, that the call in was made by the officer with call number 1488, and that the traffic stop occurred on Jessamine. Corporal Porter testified that his call number was 1488, that the CAD report was for the traffic stop of Anderson, and that he did not call in any other incidents on Jessamine that morning. Accordingly, despite the equivocation in Young's testimony, there was evidence from which the district court could find that the computer generated time stamp indicating that the traffic stop occurred at 6:45 AM was for the traffic stop of Anderson. Thus, while there was contrary evidence presented, the district court's factual finding that the traffic stop was made at 6:45 AM was not clearly erroneous. *See Scroggins*, 599 F.3d at 440.

As the district court's factual finding was not clearly erroneous, Anderson has not shown that the district court erred by finding that there was reasonable suspicion to support the initial traffic stop. The parties stipulated that sunrise did not occur that morning until 6:57 AM. While Anderson notes that he only traveled a very short distance without displaying his headlights before Corporal Porter initiated the traffic stop, Louisiana law provides that any driving without displaying headlights between sunset and sunrise is a traffic violation. *See* LA. REV. STAT. § 32:301(A)(1). As Corporal Porter

No. 13-30275
c/w No. 13-30280

observed Anderson commit a traffic violation, the initial traffic stop was justified. *See United States v. Thomas*, 120 F.3d 564, 573 (5th Cir. 1997).

While Anderson described the location of the traffic stop as a residential street with single family houses as opposed to a high crime area, Corporal Porter testified that it was a high crime area and that he had made many arrests in the area for prostitution and other offenses. This testimony was sufficient for the district court to determine that the area was a high crime area, whether or not it was also a residential area. *See United States v. Rideau*, 969 F.2d 1572, 1573, 1575, 1578 n.1 (5th Cir. 1992) (en banc). Although the fact that the stop occurred in a high crime area was not sufficient by itself to give Corporal Porter reasonable suspicion to prolong the traffic stop, it was a factor that could be considered. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

The evidence presented at the suppression hearing indicated that when Corporal Porter prolonged the traffic stop, the following factors were present: (1) Anderson was in a high crime area where prostitution and other crimes occurred; (2) Anderson had been parked in a lane of travel with a female passenger for no apparent reason; (3) Anderson and his female passenger did not know each other's names; (4) Anderson's fly was open; and (5) Anderson made a hand move that could have involved trying to hide something in the back seat immediately upon seeing a police vehicle. These factors collectively provided Corporal Porter with at least reasonable suspicion that prostitution may have been occurring. *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999). While there may have been innocent explanations for all of these factors, this does not negate the existence of reasonable suspicion. *See id.* at 759 n.5. Accordingly, Anderson has not shown that the district court

erred by finding that there was reasonable suspicion to prolong the traffic stop or by denying his motion to suppress. *See id.* at 759 & n.5.

Anderson argues that the district court plainly erred by making an upward departure or variance from the guidelines sentence range. He asserts that the district court improperly relied upon his bare arrest records for failing to register as a sex offender on other occasions to support the enhancement. He further maintains that the police report from his arrest in Pointe Coupee Parish for a sex offender registration violation showed that he did register as a sex offender in that parish on October 30, 2009, but subsequently failed to make required community notifications and pay the required fee. He asserts that the police report from his arrest in Franklin County showed that he was arrested for failing to register as a sex offender on January 27, 2011, during the time period that he was living in Baton Rouge that formed the basis of the SORNA charge, and he could not have been living in Franklin County at that time. Anderson maintains that the district court also plainly erred by increasing his sentence to provide him with treatment and rehabilitation. Anderson asserts that the district court's errors affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

We review criminal sentences for reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). We initially determine whether the district court committed any procedural errors. *Gall*, 552 U.S. at 51. If the sentence imposed is procedurally sound, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard . . . tak[ing] into account the totality of the circumstances." *Id.*

No. 13-30275
c/w No. 13-30280

While Anderson objected to the imposition of the upward departure or variance, he did not raise the arguments that he raises on appeal concerning the consideration of his bare arrest record and rehabilitative needs. Therefore, as Anderson acknowledges, we review for plain error only. *See United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009); *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003). In order to demonstrate plain error, Anderson must show a forfeited error that is clear or obvious and that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes such a showing, we have the discretion to correct the error but will do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id.*

In making the upward departure or variance, the district court secondarily relied upon Anderson's prior violent felony convictions for rape and two counts of armed robbery, for which Anderson was sentenced at the same time and which counted for only five criminal history points, and primarily upon evidence that Anderson failed to properly register as sex offender on many occasions. Thus, the basis of the upward departure was based upon factors set forth in the Guidelines. *See* U.S.S.G. § 4A1.3(a)(2)(B), (E). The district court did not mention Anderson's arrest record, and it instead based the upward departure upon Anderson's conduct as shown by the evidence presented. While the evidence of Anderson's arrest in Franklin County in 2011 may not have been reliable evidence that he had failed to register in Franklin County because he was living in Baton Rouge at the time, there were large amounts of other evidence in the record that Anderson had been non-compliant with sex offender registration requirements on numerous occasions since he was released from prison in 2003, such as six administrative notifications of Anderson's failure to comply with sex offender registration requirements and

Anderson's admission at rearraignment that he had falsely registered at an address where he did not live. Furthermore, while Anderson's arrests for sex offender registration violations were reported in the PSR, factual recitations of Anderson's conduct underlying those arrests based upon offense reports were also included, making the district court's consideration of that conduct permissible. *See United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013). As the upward departure or variance was based upon evidence of Anderson's conduct contained in the PSR and obtained from law enforcement sources, and Anderson did not challenge the factual recitations contained in the PSR, Anderson has not shown that the upward departure or variance was plainly erroneous on this ground. *See United States v. Harris*, 702 F.3d 226, 229-31 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1845 (2013).

In pronouncing sentence, the district court referenced Anderson's need for sex offender treatment, medical treatment, and possibly drug abuse treatment. Nevertheless, the primary concern expressed by the district court was Anderson's criminal history. The only mention of the need for sex offender and medical treatment was made in the course of the district court's recommendation that Anderson be incarcerated at a facility where he could receive such treatment, and the Supreme Court has held that "a court may urge the BOP to place an offender in a prison treatment program." *Tapia v. United States*, 131 S. Ct. 2382, 2392 (2011). As the district court made only two brief references to rehabilitative programs and one of these was expressly permitted by the Supreme Court, it is clear that to the extent that the district court relied upon rehabilitative needs at all, this was a permissible secondary concern, not an impermissible dominant factor. *See United States v. Garza*, 706 F.3d 655, 660 (5th Cir. 2013). Accordingly, Anderson has not shown that

No. 13-30275
c/w No. 13-30280

the district court committed error, plain or otherwise, by basing his sentence on rehabilitative needs. *See id.*

AFFIRMED.